UNITED STATES of America

v.

John ANDREADIS, a/k/a John Andre, Saul Miklean, Arthur D. Herrick, Drug Research Corporation, a corporation, New Drug Institute, Inc., a corporation, and Kastor, Hilton, Chesley, Clifford and Atherton, Inc., a corporation, Defendants.

No. 64–CR–28.

United States District Court
E. D. New York.

Oct. 7, 1964.

Joseph P. Hoey, U. S. Atty., Eastern District of New York, for the United States; Martin R. Pollner, Asst. U. S. Atty., of counsel.

Harris B. Steinberg, New York City, for defendants Arthur D. Herrick and New Drug Institute, Inc.; Harris B. Steinberg, Stanley S. Arkin, New York City, of counsel.

BARTELS, District Judge.

Motion by defendants Arthur D. Herrick and New Drug Institute, Inc. to dismiss the indictment as against them or, in the alternative, to suppress all evidence or leads therefrom upon the grounds that (1) they were deprived of effective assistance of counsel because of the United States Attorney's unlawful intrusion into the counsels of the defense, and (2) the Government's use of the record of a "Hearing Before Report of Criminal Violation" was a deprivation of their right to counsel, to a fair trial and against self-incrimination.

Defendants, with others, are charged in a fifty-eight count indictment with conspiracy (18 U.S.C. § 371), mail fraud (18 U.S.C. §§ 1341 and 2), false advertising by television (18 U.S.C. §§ 1343 and 2) and misbranding of drugs (21 U.S.C. §§ 331(a), 333(b), and 18 U.S.C. § 2), which charges constitute felonies under the United States Code.

On June 14, 1960, prior to the present Federal indictment, the same defendants with the exception of Herrick and Saul Miklean, were charged in the Criminal Court of New York City, New York County, in a 134-count indictment with State crimes of conspiracy and false and misleading advertising which under the New York statute constitute misdemeanors. Both indictments arose out of alleged misrepresentations as to the effectiveness of "Regimen" tablets, a drug sold as an aid to weight reduction. The element of intent is essential to the Federal offense but is unessential to the State offense.

On February 13, 1962, after the filing of the State charges but prior to the present Federal indictment, the United States Government instituted a civil libel action against defendants John Andreadis and Drug Research Corporation (of which Andreadis was president and sole stockholder) within this district, seeking the condemnation of certain quantities of "Regimen" tablets on the ground that they were misbranded. At that time Assistant United States Attorney Martin R. Pollner represented the Government. Subsequently, on November 4, 1963, after the civil libel action was terminated, Pollner was transferred to the Criminal Division of the United States Attorney's Office and authorized to present the indictment and represent the Government in the present case.

Apparently, while these two defendants were preparing for the defense in the civil libel proceeding, they were also preparing for the New York criminal case. In connection with the libel action Pollner during the period from August to October, 1963, subpoenaed a number of individuals for the purpose of taking their depositions, among whom were the defendants Andreadis and Herrick and several persons who had been retained as medical or scientific experts by them in the State criminal case for the purpose of planning, assisting and preparing the case for the defense. According to Pollner's affidavit, which was not contradicted, the Government was advised early in the case that the scientific proof offered in the State case would be offered in the Federal civil case. Pursuant to the Federal Food, Drug, and Cosmetic Act, the Government seized and condemned a quantity of misbranded tablets in the civil libel proceeding in which only the defendant Drug Research Corporation and its president John Andreadis were defendants. The depositions in that case were taken pursuant to Rule 26 of the Federal Rules of Civil Procedure, 28 U.S.C., according to which their counsel received notice of and was present at each deposition.

On three separate occasions and before three different judges, counsel for the defense attempted by motion to either va-

cate the notice to take deposition or terminate the deposition.[1] Upon these occasions the Court was made aware of the existence of the State criminal proceeding and the fact that certain doctors and witnesses would be examined with respect to scientific and chemical tests conducted for the defense and the procedures followed with respect thereto. In fact, Judge Rayfiel, over the objections of counsel, ordered Andreadis to answer certain questions concerning clinical and laboratory tests made with respect to the drug. In addition to counsel for Andreadis and Drug Research Corporation who were at all of the examinations, counsel for Kastor, Hilton, Chesley, Clifford and Atherton, Inc. was present during the testimony of three of the witnesses, and defendant Herrick, who was also examined, served during the examination as his own counsel. Four of the doctors examined were represented by counsel and some of the other witnesses were advised of their right to counsel and their Fifth Amendment rights before the examination. None of the witnesses except the defendants who were examined, are claiming that their Fifth and Sixth Amendment rights were violated. When Dr. Roberts, who was retained by defendants as an expert witness in both cases, was examined, Joseph Stone, the Assistant District Attorney handling the New York criminal case, was expressly authorized to be present by Andreadis and Drug Research Corporation upon the theory that the defenses in both cases would be the same.

On January 8, 1964, pursuant to Section 335 of Food, Drug and Cosmetic Act, 21 U.S.C., the Food and Drug Administration issued to defendant Herrick a notice entitled "Notice of Hearing", according to which an informational hearing was held by the Administration on January 13, 1964, at which Herrick was given an opportunity to explain voluntarily the circumstances in connection with the alleged violation of the Food, Drug and Cosmetic Act for the purpose of enabling the Administration to determine whether or not the matter would be referred to the Department of Justice for prosecution. At that hearing he was not interrogated but he gave a transcribed statement.

I

Defendants' Claim of Intrusion into Counsels of the Defense and Involuntary Self-Incrimination.

■ Defendants claim that the evidence in support of the indictment was obtained in violation of their constitutional right to counsel and consequently a hearing should be held to ascertain whether such evidence was tainted and legally insufficient for the purpose of dismissing the indictment. A defendant charged with a crime has no right to challenge the adequacy or competency of the evidence supporting the indictment. Costello v. United States, 1956, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397. Consequently, he is not entitled to any preliminary hearing or an examination of the proceedings to determine the sufficiency of the evidence presented before a Grand Jury because its function is not to conduct a trial based upon admissible evidence but to explore the probability of the commission of a crime based upon relevant facts and information which may or may not be admissible into evidence. Lawn v. United States, 1958, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321; Holt v. United States, 1910, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021; United States v. Reed, Cir. Ct.N.D.N.Y.1852, 27 Fed.Cas. pp. 727, 738, No. 16,134. Defendants' remedy in case of tainted evidence is a motion to suppress but in such a case mere suspicion, innuendo, conjecture or conclusion will not suffice. See United States v. Weinberg, D.C.D.C.1952, 108 F.Supp. 567. The motion to dismiss must therefore be denied.

Much of defendants' brief is devoted to quotations from the depositions taken by

---

1. June 17, 1963, before Judge Dooling; August 21, 1963, before Judge Rayfiel; and September 9, 1963, before Judge Zavatt.

Pollner in the civil libel case to establish the fact that his examinations constituted an intrusion on the counsels of defendants of their planning and preparing for the defense of the State court criminal case. Interwoven with the charge of unlawful intrusion is the claim of involuntary self-incrimination.

As to the alleged intrusion, defendants cite a number of authorities to the effect that any intrusion by the Government "into the counsels of the defense" constitutes a violation of defendants' rights under the Fifth and Sixth Amendments.[2] This principle is well established and needs no reiteration. The difficulty arises in the application of the principle to the facts in this case. When a defendant or his counsel admits into the privacy of their relationship and consultation a third party witness, the privacy as a general rule is automatically destroyed. An analogous situation arises in the field of evidence in connection with the objection, based upon the attorney and client privilege, to testimony of a third party who was present at a conference between the attorney and client. The third party's presence destroys the privilege. Himmelfarb v. United States, 9 Cir. 1949, 175 F.2d 924.[3] A defendant has no right to expect that every expert or other witness who is interviewed, consulted or engaged by him or his attorney shall be frozen in his behalf as a witness and insulated against further examination by the Government simply because the witness was present at a conference between the defendant and his attorney. In addition, it does not appear from the record to what extent the defendants were present at the conferences of the witnesses and the attorneys.

Another reason exists why the depositions in this case are not tainted. The testimony was given pursuant to Rule 26 of the Federal Rules of Civil Procedure and was given voluntarily. This rule permits an examination of a relevant matter relating to the claim or defense and it is immaterial that the testimony is inadmissible if it might lead to evidence which is admissible. As the rule indicates, the testimony, however, must be relevant. Under subdivisions (b) and (d) of Rule 30 of the Federal Rules of Civil Procedure either a party or any person examined might either before or during the taking of the deposition move for a protective order to prevent inquiry into certain matters or to protect the party or witness from oppression. Upon a showing that the actual examination was being conducted in bad faith, the court has the power to terminate the deposition. No such motion was made either by the parties to the action or by any witness examined.[4] The fact that a criminal proceeding is pending in one court does not stifle discovery proceedings in a civil action in another court, particularly when the issues in both cases

2. Coplon v. United States, 1951, 89 U.S. App.D.C. 103, 191 F.2d 749, cert. denied, 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690; Caldwell v. United States, 1953, 92 U.S. App.D.C. 355, 205 F.2d 879, cert. denied, 349 U.S. 930, 75 S.Ct. 773, 99 L.Ed. 1260; United States v. Lebron, 2 Cir. 1955, 222 F.2d 531, cert. denied, 350 U.S. 876, 76 S.Ct. 121, 100 L.Ed. 774; United States v. Cohn, S.D.N.Y.1964, 63-Cr. 748 (opinion of Judge Dawson, not yet officially reported); Matter of Fusco v. Moses, 1952, 304 N.Y. 424, 107 N.E.2d 581; State v. Cory, 1963, 62 Wash.2d 371, 382 P.2d 1019; Ex Parte Ochse, 1951, 38 Cal.2d 230, 238 P.2d 561.

3. Exceptions in the attorney-client privilege cases exist with respect to third parties whose connection with the client is based upon prior agency such as the relationship of secretary, nurse or partner to a client. 8 Wigmore, Evidence (McNaughton rev. 1961) §§ 2311, 2312; McCormick on Evidence, § 95, and similar exceptions would appear to follow in criminal cases depending upon the circumstances.

4. Regarding a notice to take certain depositions including one of a medical doctor, the Government's good faith was upheld by Judge Dooling by order dated June 17, 1963, in response to defendants' motion.

to a great extent overlap.[5] Otherwise every civil case which parallels a similar criminal case would be sterilized or consigned to limbo by reason of the pending criminal action. On the other hand, defendants in a criminal action have a right to insist upon their constitutional privileges and in such case the court in the civil and criminal actions has ample power to protect them. The conduct of these depositions was obviously a matter of common knowledge to all of the defendants who were involved in the State criminal case. Those who were examined, whether parties or only witnesses in the civil action, had ample remedies to protect their rights if they thought they were being infringed. Those witnesses who were not parties to either action were required to give only such testimony as did not violate their constitutional rights and in so doing they had no obligation to protect the constitutional rights of the defendants in the criminal case.

■■■ The gravamen of the intrusion cases is the invasion of the private and confidential relationship between attorney and client. There is no question that a defendant has a right to a private consultation with his attorney free from the presence of an informer. Otherwise his right to counsel and to a fair trial is violated. This privacy is not violated when the testimony is given pursuant to a court order and he, as a witness or a defendant, has an opportunity to object with respect to any potential violation of his constitutional rights. As far as defendants Herrick and New Drug Institute, Inc. are concerned, Herrick as a member of the Bar, acted as his own attorney and also as attorney for New Drug Institute, Inc. and defendants Andreadis and Drug Research Corporation were represented by an attorney. They

cannot complain that they did not know their constitutional rights. The testimony of these defendants and witnesses was voluntary and open. There was no spying or eavesdropping. Their examination was neither an intrusion on their privacy of counsel nor involuntary self-incrimination. At all events, as far as the State case is concerned, the defendants' remedy was in the first instance in the State court and should have been asserted at the time. Apparently no objection was made at that time to the potential use of the evidence obtained from the depositions.

■■■ But defendants claim that the charge of compulsory self-incrimination cannot be dismissed so lightly. They assert, in effect, that their testimony was not voluntary because they had no knowledge of a subsequent possible Federal criminal proceeding at the time of the depositions and that the prosecutor without warning to them improperly used discovery proceedings to obtain evidence to prosecute the present criminal case. It is true that if the Government's purpose in conducting the depositions in the civil case was solely to obtain evidence for a subsequent criminal case[6] and the defendants were not apprised of this purpose, a situation might exist involving an abuse of process based upon deceit, which might subject the United States Attorney to sanctions and provide the defendants with appropriate remedies. Cf., United States v. Remington, 2 Cir. 1951, 191 F.2d 246, 251, cert. denied, 1952, 343 U.S. 907, 72 S.Ct. 580, 96 L.Ed. 1325. But this is not that case. Pollner had been advised that the scientific proof offered in the State case would also be offered in the Federal seizure action. Consequently, the inquiry into the scien-

5. When the result of the entire case, as here, depends upon medical and expert testimony and opinion, cf., United States v. NYSCO Laboratories, Inc., E.D.N.Y. 1960, 26 F.R.D. 159, 162, this is singularly true.

6. Some of the prosecutor's queries did exceed the limits of propriety and appear to have been prompted more by zeal than by relevance, such as his queries as to whether Herrick was conducting lectures "at New Drug Institute for the benefit of lawyers in relation to a criminal case in New York County" and questions concerning conferences between defense attorneys.

tific proof to be offered in the State criminal case was relevant and *bona fide*.

As above stated, when the examinations were being conducted, the witnesses and the defendants had their remedies in the civil proceeding to protect any constitutional rights they felt were being violated; however they did not object upon the grounds they now assert but voluntarily testified. It is difficult to comprehend how a charge of deceit against the prosecutor can be sustained. According to the statement on the record by the United States Attorney, the depositions were completed in October, 1963, and Pollner was transferred to the Criminal Division on November 4, 1963, and no determination was made to present the case to the Grand Jury until the completion of the civil case. To avoid unnecessary duplication of work it was only logical that the United States Attorney should assign Pollner to the criminal case at the completion of the civil case. Bad faith cannot be inferred from that fact alone.

Quite pertinent are a number of tax cases which expressly hold that the fact that the Government fails to disclose that an investigation of a taxpayer might be converted from a civil inquiry to a criminal proceeding does not constitute fraud or deceit upon the taxpayer nor require that the defendant be warned that the information obtained in the civil proceeding might be used against him in a criminal case. United States v. Young, E.D. Mich.1963, 215 F.Supp. 202; Turner v. United States, 4 Cir. 1955, 222 F.2d 926; United States v. Remolif, D.C.Nev.1964, 227 F.Supp. 420. This principle has also been applied to testimony before the Grand Jury. "And so we now hold that the mere possibility that the witness may later be indicted furnishes no basis for requiring that he be advised of his rights under the Fifth Amendment, when summoned to give testimony before a Grand Jury." United States v. Scully, 2 Cir. 1955, 225 F.2d 113, 116, cert. denied, 1955, 350 U.S. 897, 76 S.Ct. 156, 100 L. Ed. 788. It is hard to believe that under all of the circumstances the defendants in this case were not alerted to the strong possibility of a Federal criminal proceeding subsequent to the civil libel action. The Court finds that no bad faith or deceit on the part of the prosecutor has been established and that there has been no violation of the defendants' constitutional rights against self-incrimination.

## II

### Government's Use of § 335 Report

Defendants further claim that a decision had already been made to prosecute them at the time the informational hearing of Herrick was held and consequently the latter was deprived of his right to counsel, to a fair trial and his right to protection against self-incrimination. The basis of this charge was that on January 23, 1964, less than one week subsequent to the hearing, defendants were named in a 58-count indictment and that considering the fact that the statement was taken on Friday, January 17, 1964, it is incredible to believe that defendants were not already marked for prosecution by the Government at the time the Administration took the statement. In other words, defendants claim that this is a type of case that falls within the category of Massiah v. United States, 1964, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, and Escobedo v. Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977. The Court does not agree.

Section 335 does not require an informational hearing pursuant to its provisions before the institution of a criminal proceeding. United States v. Hunter Pharmacy, Inc., S.D.N.Y.1963, 213 F.Supp. 323. The nature of defendants' claim is that there was a form of trickery employed to obtain Herrick's statement. The hearing was held before the indictment and the informational sheet made it clear that Herrick was being given an opportunity to explain "voluntarily" any circumstances which would indicate that criminal action should not be taken. The sheet also indicated that he could appear in person or by attorney and that his response could be by letter in lieu of personal appear-

ance. He knew that at the conclusion of the hearing a recommendation might be made for criminal action. In fact, he was an attorney and not a newcomer to these proceedings.[7] The informational sheet also informed him that any civil action which might have been taken against the goods involved "does not preclude prosecution of those responsible for the violation". Pursuant to this opportunity he made a statement but he was not interrogated. When he did so he voluntarily took his chances that an attempt might be made to use it in a criminal proceeding.

 Deceit is not a necessary inference from the short hiatus between the date of the hearing and the date of the indictment. The indictment could have been prepared before the hearing and if the statement satisfied the Administration, the Government would still have the opportunity and the power to abandon the prosecution. However, Herrick gave this statement under the implied understanding or promise that it would be considered before a decision to prosecute was made. But the United States Attorney stated on the record at the argument that he made the decision to prosecute independently and that there had been no criminal referral to his office. This presents a question as to whether Herrick's statement was considered at all before the decision to prosecute was made. If it was not, then his statement was obtained under false representation and should not be made available to the Government. It is no excuse that two different departments of the Government acted independently of each other because as far as Herrick was concerned, he had a right when he made the § 335 statement to expect that no decision to prosecute would be made until adequate consideration was given to the statement; otherwise he was misled.

It would be unfair under such circumstances to permit the Government to use the fruits of its own wrong. For this reason the observance of the minimal constitutional requirements may be insufficient to protect the defendants. The misuse by the Government of a legal procedure in connection with the enforcement of the law may justify, in the interest of fair play, the exclusion of the evidence so obtained. Defendants cite the Massiah and Escobedo cases, but the Court believes that United States v. Shotwell Manufacturing Co., 7 Cir. 1955, 225 F.2d 394, vacated and remanded on other grounds, 1957, 355 U.S. 233, 78 S.Ct. 245, 2 L.Ed. 2d 234, United States v. Pack, D.C.Del. 1956, 140 F.Supp. 121, and United States v. Thayer, D.C.Col.1963, 214 F.Supp. 929, are more in point. Shotwell and Pack were criminal prosecutions for income tax evasion in which the evidence was suppressed on Fifth Amendment grounds as a result of a finding that the defendants had relied on the announced policy of the Government that no criminal prosecution would be initiated if voluntary disclosure was made. In the leading case of McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, the Supreme Court ruled that quite apart from constitutional requirements, the Federal courts in criminal prosecutions should be prompted by considerations of fairness and justice in passing upon the admissibility of evidence and should not be limited to the question of relevance. Mr. Justice Frankfurter stating: "We hold only that a decent regard for the duty of courts as agencies of justice and custodians of liberty forbids that men should be convicted upon evidence secured under the circumstances revealed here." (p. 347, 63 S.Ct. p. 616) These instructions were implemented in Thayer, a case involving allegedly perjured testimony given at an administrative hearing, when

---

7. At the hearing the following took place between B. T. Loftus, Acting Director, New York District, Food and Drug Administration, and Herrick:

"MR. LOFTUS: Mr. Herrick, you have been here on other occasions and I know you are familiar with the purpose of the hearing and the function of the hearing officer.

"MR. HERRICK: That is true. I have been here not as a witness or respondent, but as an attorney or representative."

the court stated that "[c]ircumstances of instigation or of entrapment, or circumstances showing disparity of knowledge as between the Government and the accused whereby he lacked realization of the true import of the inquiry, would necessarily require exclusion of the evidence." (214 F.Supp. p. 933)

But Herrick made no showing that his § 335 statement was not considered by the Government before the decision to prosecute was made except insofar as the circumstances heretofore related raised the question. At the present time, therefore, the motion to suppress will be denied without prejudice on the part of defendant Herrick to renew the same before this Court three (3) days before the trial, at which time a hearing will be held to determine to what extent Herrick's statement was considered before the decision to prosecute was made.

Decision upon the motion to sever is postponed until the hearing upon the admissibility in this case of the consent decree in this Court and the pleas of guilty of the other defendants in the State court.

Settle order within ten (10) days on two (2) days' notice.