In the Matter of Solomon B. TERKEL-
TOUB, a Witness Before the
Grand Jury.

No. Misc. 11–188.

United States District Court
S. D. New York.

June 8, 1966.

Robert M. Morgenthau, U. S. Atty.,
Southern Dist. of New York, J. Edward
Meyer, III, Asst. U. S. Atty., of counsel,
for United States.

Solomon B. Terkeltoub, New York
City, for respondent.

### MEMORANDUM

FRANKEL, District Judge.

This is an application to compel a
witness to give to a grand jury testi-
mony he claims is privileged. The cir-
cumstances leading to the refusal are
these:

On April 20, 1966, Vincent M. Fiorillo
was named in an indictment charging
that he had committed perjury before a
federal grand jury when he denied hav-
ing had certain telephone conversations
with one Tony Vone. Fiorillo has plead-
ed not guilty. Pretrial motions have
been heard, and the case is being readied
for trial. Fiorillo is represented by Solo-
mon B. Terkeltoub, who has been at the
bar for some 32 years.

On May 13, 1966, according to his affi-
davit, the Assistant United States Attor-
ney in charge of the Fiorillo prosecution
"received competent and reliable informa-
tion indicating that on May 12, 1966,
Vincent M. Fiorillo and his attorney,
Solomon Terkeltoub, had met Tony Vone
in a Bronx diner at Fiorillo's instance
and during a three hour conversation
had, individually or collectively and
through the offering of various induce-
ments, endeavored to persuade Tony
Vone to testify at the pending perjury
trial that he did not have the conversa-
tions alleged in the perjury indict-
ment." [1]

1. Following the quoted sentence, the af-
fidavit says: "The Government believes
that these facts, in the context of a
Grand Jury investigation, lay a sufficient
foundation for the granting of this ap-
plication. However, if the Court de-
sires additional details, the Government
would respectfully seek permission to
file *in camera* a further affidavit in view
of Rule 6(e)'s non-disclosure principles."
The possible significance of this offer is
considered below.

On May 20, 1966, Messrs. Fiorillo and Terkeltoub were called before a grand jury which had proceeded to inquire whether the foregoing facts warranted a prosecution for obstruction of justice under 18 U.S.C. § 1503. Our concern on the present application is only with the attorney, Terkeltoub, whose testimony the Government wants compelled.

On his appearance before the grand jury, Mr. Terkeltoub was asked questions (as the Government's Memorandum accurately summarizes them) "as to his alleged meeting, in the company of his client, with a third party, Tony Vone— the fact of such a meeting, the place, its duration, its initiation and purpose and the conversation which took place."

Mr. Terkeltoub asserted that answers by him to these questions would effect a deprivation of his client's rights to due process under the Fifth Amendment and to the effective assistance of counsel under the Sixth. Amplifying this view, he said: "If I am told by the Court that I am not breaking a professional confidence and privilege, then I will answer those questions providing there is nothing personal insofar as I am concerned."

It is common ground that this refusal to answer is not based upon the traditional attorney-client privilege.[2] Here, then, as in Hickman v. Taylor, 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947), there is no necessity "to delineate the content and scope of that privilege as recognized in the federal courts."

Elimination of that privilege simplifies the problem, but does not make it simple. On the one hand, there is the heavy weight of history and public need commanding that the grand jury's investigations be as unfettered as possible. See, e. g., United States v. Thompson, 251 U.S. 407, 413–415, 40 S.Ct. 289, 64 L.Ed. 333 (1920). And the Government comes here with the laudable purpose of guarding against suspected attacks on the integrity of the judicial process itself. Cf. Massiah v. United States, 377 U.S. 201, 207, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); Caldwell v. United States, 92 U.S.App.D.C. 355, 205 F.2d 879, 881 (1953), cert. denied, 349 U.S. 930, 75 S.Ct. 773, 99 L.Ed. 1260 (1955). On the other hand, the disclosures now demanded touch a vital center in the administration of criminal justice, the lawyer's work in investigating and preparing the defense of a criminal charge. Appraising these interests in the circumstances now presented, the court concludes that the attorney was not only entitled, but probably required, to withhold answers to the grand jury's questions.

In explaining this conclusion, it bears emphasis that while the witness before us is a lawyer, the crucial interests at stake belong to the whole community. As a seasoned trial lawyer and Justice said, "it too often is overlooked that the lawyer and the law office are indispensable parts of our administration of justice. * * * The welfare and tone of the legal profession is therefore of prime consequence to society, which would feel the consequences" of a practice impairing the lawyer's effective representation of his client. Hickman v. Taylor, supra, 329 U.S. at 514–515, 67 S.Ct. at 395 (Jackson, J., concurring).

In the same opinion, Mr. Justice Jackson said (id. at 517, 67 S.Ct. at 396):

"Every lawyer dislikes to take the witness stand and will do so only for grave reasons. This is partly because it is not his role; he is almost invariably a poor witness. But he steps out of professional character to do it. He regrets it; the profession discourages it. But the practice advocated here is one which would force him to be a witness, not as to what he has seen or done but as to other

---

2. The testimony sought relates to a meeting with a third party. In addition, it deals allegedly with a conversation amounting to, or looking toward, the commission of a crime. See 8 Wigmore, Evidence §§ 2298–99, 2311 (McNaughton rev. 1961).

witnesses' stories, and not because he wants to do so but in self-defense."

And so we start here with a demand that is troublesome on its face—a demand that a lawyer be forced to testify about his work in supposed defense of a client. Our problem is not solved, but it is affected, by a recognition that this sort of procedure must have at least a slightly chilling impact upon counsel for defendants in criminal cases. Again, this has nothing to do with whether lawyers for their own sakes should be treated better or worse than other people. It has to do with how the public may fare depending on the course followed with applications like the one before us.

The attorney whose testimony is now sought is concerned at the moment with "perhaps the most critical period of the proceedings" against the defendant Fiorillo—"from the time of * * * arraignment until the beginning of * * * trial, when consultation, thorough-going investigation and preparation [are] vitally important * * *." Powell v. State of Alabama, 287 U.S. 45, 57, 53 S.Ct. 55, 59, 77 L.Ed. 158 (1932). At the heart of the job of "thorough-going investigation and preparation" is the interviewing of prospective witnesses, hostile as well as friendly.[3] And no lawyer, on any side of any case, would consider it salutary for his client that the opposition knew who was being interviewed and what was being said during such meetings. If vivid illustration were needed, it is supplied every day in this courthouse by the Government's stout resistance to discovery efforts by defendants in criminal cases.

██ Because privacy is so vital to these preparatory efforts, the prosecution is forbidden to eavesdrop or plant agents to hear the councils of the defense. Coplon v. United States, 89 U.S. App.D.C. 103, 191 F.2d 749 (1951), cert. denied, 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952); United States v. Andreadis, 234 F.Supp. 341, 345 (E.D.N.Y. 1964), collecting cases. It makes no difference whether the conversations unlawfully audited are solely between counsel and client and thus within the traditional, nonconstitutional privilege. The defendant has a right to prepare in secret, seeing and inviting those he deems loyal or those with whom he is willing to risk consultation. The prosecution's secret intrusion offends both the Fifth and Sixth Amendments. Caldwell v. United States, 92 U.S.App.D.C. 355, 205 F.2d 879 (1953), cert. denied 349 U.S. 930, 75 S.Ct. 773 (1955).

Our problem is altogether different, the Government says, because there is no question here of surreptitious invasion, but only an open demand that defense counsel report what went on. This is a distinction, to be sure, and it obviously makes some difference. It does not make enough difference, however, to extract the testimony the Government demands for the grand jury.

The ultimate interest to be protected is the privacy and confidentiality of the lawyer's work in preparing the case. It is the violation of that interest that is held offensive to the Constitution in the cases of eavesdropping and spying. The protection would be a thin illusion if the Government could have for the asking what it has, in rare lapses, sought by less genteel means.

██ And so we focus more closely upon the more limited issue the Government puts: Where the prosecution, pre-

3. The Government discounts this thought because, its says, there is no attempt "to compel discovery before trial of the prospective testimony of any *defense* witness." Affidavit, par. 5(d) (emphasis in original). While it is reasonable to guess that Tony Vone is expected to appear for the prosecution, no witness is appropriated in advance to either side. Cf. United States v. Andreadis, 234 F. Supp. 341, 345 (E.D.N.Y.1964). Moreover, the inquiries put to defense counsel, seeking to know the whole of the alleged conversation with Vone, obviously range far beyond what his possible testimony might be. They could include, for example, questions and observations that a lawyer would scarcely want to report under oath to his adversary.

sumably with reason, suspects that a witness is being tampered with, may the defense lawyer preparing for trial be compelled to report under oath the existence, time, place, and content of an interview with the witness? Without holding that there could never be an affirmative answer to this question, our conclusion is that it should be answered in the negative on the facts now before us.

Even in civil litigation, disclosure of this kind will be compelled only in a "rare situation" that may justify "an exception to the policy underlying the privacy of [the attorney's] professional activities." Hickman v. Taylor, supra, 329 U.S. at 513, 67 S.Ct. at 395. Out of abundant caution, we leave open the possibility that still more rare circumstances could justify a demand of the kind here in question. But we are not persuaded, balancing the claim of need for the testimony against the potential hurt of it, that there is any sufficient justification in this case.

In arriving at this judgment, leaving the grand jury its secrets for the moment, the court is admittedly going on factual premises that are in some measure speculative. On what is before us, we could assume either that (1) Tony Vone has reported efforts to subvert him or (2) the Government has listened in on conversations with him. The second assumption is presumed to be false. Proceeding on the first, we perceive no overriding necessity for compelling the attorney's testimony at this time. In the worst light—and only for the sake of argument—we note that the attorney would have his privilege against self-incrimination. If we accord him presumptions no less favorable than those given the Government, his compelled account of the interview could serve only as potential impairment of his effectiveness at the trial. In either event, there appears to be no showing of the kind of vital, urgent, and immediate need for unique knowledge that might warrant the extraordinary compulsion the Government seeks.

The speculations in the preceding paragraph are prompted mainly by the prosecutor's proposal (see footnote 1, supra) to supply more facts by filing "in camera a further affidavit" if the court should deem the application insufficient as it stands. It is possible, of course, that further information could lead to a changed conclusion. For reasons sketched above, however, this is doubtful. What is even more doubtful is the propriety of our continuing this adversary hearing on the basis of ex parte affidavits. If the United States Attorney deems this doubt unfounded and proposes to pursue the idea of an in camera presentation, we will entertain, with due service, memoranda from both sides on the subject. Beyond that, the suggestion that we proceed further in secret is rejected.

On the record as made, the application to compel the attorney to testify is denied.

So ordered.