**In re GRAND JURY PROCEEDINGS.**

**No. 77–1–Misc.–J.**

United States District Court,
M. D. Florida,
Jacksonville Division.

Feb. 18, 1977.

B. Anderson Mitcham, and Thomas R. Fay, Tampa, Fla., for movant.

John J. Daley, Jr., and Curtis Fallgatter, Asst. U. S. Attys., Jacksonville, Fla., for the government.

## ORDER

CHARLES R. SCOTT, Senior District Judge.

The Court has three motions before it in this cause: (1) a motion for a transcript of the movant-witness' testimony before a grand jury on December 10, 1976; (2) a motion to quash three subpoenas duces tecum issued by a grand jury; and (3) a motion to produce a former client of movant-witness, to testify concerning a purported waiver of that client's attorney-client privilege. The Court held hearings on the issues raised by the motions on January 12th and 14, 1977, and February 16, 1977, after which the Court took the motions under advisement pending an in camera inspection of the documents sought by the subpoenas duces tecum.

## I. MOTION TO PRODUCE TRANSCRIPT OF GRAND JURY TESTIMONY

First, movant seeks a transcript of his earlier testimony before the grand jury (on December 10, 1976), on the grounds that (1) the infirmities of his age and health prevent him from recalling his previous testimony clearly and precisely, possibly resulting in inadvertent perjury; and (2) during his previous testimony, his Fifth Amendment right was violated by prosecutorial misconduct that deviated from the dictates of a prior Court order concerning movant's testimony. Movant contends that because he is nearly seventy-four years old, with poor health including cardiac disease, his stress tolerance is very low and his ability to recall questions and answers clearly is diminished.

On December 10, 1976, movant appeared under subpoena before the grand jury, where he declined to answer eleven specific questions on the basis of the Fifth Amendment and attorney-client privileges. Later that day movant appeared with counsel before the Court on the motion of the government to compel movant's answers to the eleven questions asked him by the grand jury pursuant to its subpoena. In closed session, out of the presence of government counsel, the Court determined that three of the eleven questions facially would violate the Fifth Amendment if an answer were required. *See In Re: Hitson*, 177 F.Supp. 834, 836–38 (N.D.Calif.1959). Hence, the Court sustained movant's objection to answering those three questions, ruling that no answer to them could be compelled, but ordering movant to answer the remaining eight questions. Still later that day, movant appeared again before the grand jury to answer those remaining eight questions. Movant now contends also that the Assistant United States Attorney, John J. Daley, Esq., committed improprieties by interrogating movant again about the three questions to which the Court had sustained movant's constitutional objection.

A single transcript of the closed-court session on December 10, 1976, when the Court ruled on movant's objections to the eleven questions asked him earlier before the grand jury, is in the custody of the Court, in a sealed file, Case No. 76–40–Misc.–J. Mr. Daley has submitted a sealed copy of movant's transcribed testimony before the grand jury on December 10, 1976, both prior to, and after, the closed-court hearing on movant's objections. The Court has read the entire transcripts of all three proceedings carefully, comparing the conduct of Mr. Daley and movant with the instructions of the Court's order of December 10. Far from exhibiting any impropriety or misconduct by government counsel, the transcripts demonstrate a scrupulous concern by Mr. Daley that exceeded even the spirit of the Court's order in his compliance, not to mention the mere letter of it.

■ The law is definite that a witness before a grand jury does not have a right to a transcript of his testimony. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S.

395, 400, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959). It is always a matter within the discretion of the Court; and the burden is on a movant to demonstrate "a particularized need" outweighing the historical and sound policy of secrecy concerning grand jury proceedings. *Id.* Fed.R.Crim.P. 6(e). In this instance, the Court is convinced, and so holds, that there was not the slightest hint of impropriety or misconduct by government counsel. Moreover, at the hearing on these motions, Mr. Daley declared that he had no present intention to recall movant as a witness before the grand jury, in view of movant's insistence upon asserting his Fifth Amendment privilege. Under the circumstances, and the very limited prior appearances of movant before the grand jury, the Court concludes that he has not carried his burden to present a particularized need that would warrant piercing the vital secrecy of the grand jury. *United States v. Fitch*, 472 F.2d 548, 549 (9th Cir. 1973); *In re: Bottari*, 453 F.2d 370, 371–72 (1st Cir. 1972). Consequently the Court will deny the motion to produce a transcript of movant's prior grand jury testimony.

## II. MOTION TO QUASH SUBPOENAS DUCES TECUM

### 1. *Fifth Amendment*:

 The law is now settled that the Fifth Amendment does not preclude the acquisitions and use of non testimonial, documentary evidence in the form of a person's private papers that were voluntarily created. *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39, 55–57 (1976); *Fagan v. United States*, 545 F.2d 1005, 1007 (5th Cir. 1977). Consequently, the motion to quash the three subpoenas duces tecum on the ground of Fifth Amendment immunity must be denied.

### 2. *Overbreadth of Subpoenas*:

 A subpoena duces tecum must specify with reasonable particularity the scope of the materials it commands to be produced. If it meets that general standard, a subpoena duces tecum will be enforced; if it does not, it should be quashed

without prejudice to issue a more reasonable and particularized one. *United States v. Reno*, 522 F.2d 572, 575–76 (10th Cir. 1975); *United States v. Gurule*, 437 F.2d 239, 241 (10th Cir. 1970); *United States v. Alewelt*, 532 F.2d 1165, 1168 (7th Cir. 1976); *In re: Grand Jury Subpoena Duces Tecum*, 342 F.Supp. 709, 712–13 (D.Md.1972); *In re: Certain Chinese Family Benevolent and Dist. Ass'ns*, 19 F.R.D. 97, 99–101 (N.D.Calif.1956). On the other hand, the power of a grand jury to summon all the information it deems necessary to fulfill its investigatory obligation is sweeping, limited only to the reasonable specificity that fundamental due process requires. *United States v. Doe*, 541 F.2d 490, 493 and n.3 (5th Cir. 1976); *United States v. Alewelt*, 532 F.2d 1165, 1168 (7th Cir. 1976). In view of the government's motion to modify the scope of the third grand jury subpoena, which the Court granted on February 16, 1977, the three subpoenas duces tecum are sufficiently particularized that the Court holds them to be reasonable and not overly broad in violation of due process.

### 3. *Attorney-Client Privilege*:

 Movant seeks to quash the three grand jury subpoenas duces tecum on the ground that the materials they seek are protected by the attorney client privilege. It is the burden of the party raising the attorney-client privilege to establish the critical elements of it: (1) necessary persons; (2) legitimate communications and transactions; and (3) continued assertion of the privilege. The necessary persons are (i) an actual or potential client, and (ii) a practicing attorney or his subordinates and agents in the particular relationship. The legitimate communication is one made to an attorney or his subordinates, to obtain legal opinions, assistance or other services in bona fide matters, and not to immunize tortious or criminal activity. *In re: Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir. 1972); *Commonwealth of Puerto Rico v. S.S. Zoe Colocotrani*, 61 F.R.D. 653, 659–60 (D.P.R.1974); *Bird v. Penn Central Co.*, 61 F.R.D. 43, 46 (E.D.Pa.1973); *ITT v. Unit-*

ed Telephone Co. of Fla., 60 F.R.D. 177, 180–82, 184–86 (M.D.Fla.1973); Philadelphia Housing Authority v. American Radiator & Std. Sanitary Corp., 294 F.Supp. 1148, 1150 (E.D.Pa.1969); American Cyanimid Co. v. Hercules Powder Co., 211 F.Supp. 85, 88–90 (D.Del.1962); Zenith Radio Corp. v. Radio Corp. of America, 121 F.Supp. 792, 794–95 (D.Del.1954); United States v. United Shoe Mach. Corp., 89 F.Supp. 357, 358–59 (D.Mass.1950).

The privilege, however, belongs to the client, not the attorney; and an attorney can neither invoke nor waive the privilege if his client desires the contrary. Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 556 (2d Cir. 1967). A client may waive his privilege either expressly, or implicitly by conduct that extinguishes one of the necessary elements of the privilege. Tasby v. United States, 504 F.2d 332, 336 (8th Cir. 1974).

(a). Express Waiver:

In this instance movant (who is an attorney) has been served with a document that purports to be an express waiver by his former client of the attorney-client privilege. When movant resisted an attempt by F.B.I. agents to take possession of movant's files, pursuant to the waiver, a factual issue concerning the validity of that waiver arose. Movant moved for an order that his former client, who is now in federal protective custody, be produced to testify concerning the voluntariness and authenticity of the .purported waiver. Additionally, movant seeks an opportunity to question his former client outside of the presence of government agents or counsel.

At a hearing on the question of the genuineness and voluntariness of the waiver, the former client's present counsel testified, as did the F.B.I. director-in-charge. Both men testified that the former client had been informed of the significance and consequences of signing the waiver; that he was neither under arrest nor any form of restraint or compulsion; and that in their judgment he had signed the waiver freely and knowingly. Movant produced his sec-

retary who testified that the former client was agitated and upset, expressing reluctance, and regret over the signing of the waiver and the delivery of it to movant. As would be expected, counsel for the government, together with their witnesses, characterized the former client's actions and attitude differently than did movant's secretary.

The issue is one of credibility for the Court. Movant contends that the burden to establish the voluntariness of the waiver should be on the government, much as it is to prove the voluntariness of a confession. Hence, movant argues that, under these factual circumstances, the government is obligated to produce the former client in order to meet its burden, and that the Court should so order the government. When faced with a document that on its face appears to be a genuine, voluntary waiver of the attorney-client privilege, corroborated by witnesses present at the time the waiver was executed, the Court concludes that the burden is on movant to rebut the prima facie case of validity. Moreover, to obligate the appearance of the former client, from out of protective custody, to testify about his waiver of the privilege, movant must establish a compelling need in his rebuttal of the prima facie case of validity. Finally, to obtain the production of the former client, from out of protective custody, to be questioned by movant away from government agents or counsel, movant himself would have to demonstrate a prima facie case of flagrant, egregious coercion by the government. The Court concludes that movant has not met any of those requirements; and consequently the motion to produce the former client must be denied. Additionally, the Court holds that the facial validity of the express waiver has not been rebutted and that, therefore, the waiver is effective to dissolve the attorney-client privilege.

(b). Constructive Waiver:

Where (as here) there are serious allegations of grave criminal activity that might be shielded by the attorney-

client privilege, it must yield to the legitimate demands of a grand jury's investigation. To obstruct or withhold evidence of criminal activity from a grand jury under the guise of attorney-client confidentiality would be an abuse of the privilege, necessitating its waiver. *Glass v. Heyd*, 457 F.2d 562, 565–66 (5th Cir. 1972). Consequently, the Court holds that any attorney-client privilege by movant's former client would have to give way to the genuine duty of the grand jury to investigate serious allegations of criminal activity.

In this particular case, nonetheless, the Court has carefully examined the subpoenaed papers and materials of movant several times in camera. They are annual appointment calendars for three years, and file folders containing copies of pleadings; notations by movant concerning case citations, defense strategies, and evidentiary observations; and copies of evidence supplied him by state prosecutors in the case where he represented his former client. In addition, there is a promissory note, a deposit slip, and a blank check with financial notations on the back of it. These documents are either protected by no privilege (including the attorney-client privilege) because of their public nature; or they are included in the attorney work-product privilege. In any event, the grand jury cannot be denied them on the basis of an attorney-client privilege.

### 4. *Work-Product Privilege*:

The attorney work-product privilege was first set forth by the Supreme Court of the United States in *Hickman v. Taylor*, 329 U.S. 495, 511–12, 67 S.Ct. 385, 91 L.Ed. 451 (1947). It is a qualified privilege of immunity from discovery during litigation. *Duplan Corp. v. Deering Milliken, Inc.*, 61 F.R.D. 127, 130 (D.S.C.1973); *Arney v. Geo. A. Hormel & Co.*, 53 F.R.D. 179, 180–81 (D.Minn.1971). Codified in Fed. R.Civ.P. 26(b)(3), it is ordinarily asserted in civil proceedings. Where a party establishes that materials in its possession were prepared in anticipation of litigation, they may be discovered only if the party seeking dis-

covery shows (1) a substantial need for them in order to prepare his own case, and (2) virtual unavailability of them without extreme hardship. Even then, the Court is to preclude from discovery "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

It is not necessary to have foreseen the specific litigation in progress at the time the materials were prepared, *Bird v. Penn Central Co.*, 61 F.R.D. 43, 48 (E.D.Pa.1973). If they were prepared in anticipation of some likely litigation, or as integral preparation for trial, they are immune from discovery, absent the requisite two-fold showing. *J. H. Rutter Rex Mfg. Co. v. NLRB*, 473 F.2d 223, 234 (5th Cir. 1973); *Miles v. Bell Helicopter Co.*, 385 F.Supp. 1029, 1033 (N.D.Ga.1974); *Duplan Corp. v. Deering Milliken, Inc.*, 61 F.R.D. 127, 130 (D.S.C. 1973); *Arney v. George A. Hormel & Co.*, 53 F.R.D. 179, 181 (D.Minn.1971).

In an independent grand jury proceeding, occurring subsequent to the completed litigation for which the materials were prepared, the work-product privilege is displaced by the grand jury's authority and need to accomplish its investigatorial duty. *Cf. United States v. McKay*, 372 F.2d 174, 176 (5th Cir. 1967). The powers and prerogatives of a grand jury to do its work must be protected vigorously and construed liberally. *Id.; United States v. Doe*, 541 F.2d 490, 493–94 (5th Cir. 1976). In this instance, where the work-product materials in question were prepared for a distinct and prior criminal litigation, long completed, the policies underlying the work-product privilege have already been achieved. The only effect of sustaining that conditional privilege now would be to thwart and frustrate the grand jury's investigative task. The Court will not permit that; and it expressly rejects the decision and reasoning of *In re: Grand Jury Proceedings*, 473 F.2d 840, 842, 844, 847 (8th Cir. 1973). Instead, the Court holds that, to the extent that movant's work-product privilege from a prior, completed litigation encompasses any of the materials sought by the grand jury's

subpoenas duces tecum, that privilege is overcome and must give way. The motion to quash the three subpoenas duces tecum, therefore, must be denied, and it is so ordered.