### In re GRAND JURY SUBPOENA, etc.

#### Civ. A. No. J–81–922.

United States District Court,
D. Maryland.

July 2, 1981.

---

**3.** "All parts of any contract or agreement hereafter made or entered into which either directly or indirectly limit or tend to limit the time in which any suit or action may be instituted shall be null and void."

Paul Mark Sandler, Baltimore, Md., for plaintiff.

David Queen, Asst. U. S. Atty., Baltimore, Md., for defendant.

## MEMORANDUM OPINION

SHIRLEY B. JONES, District Judge.

The present motion to compel compliance with a grand jury subpoena duces tecum requires the Court to decide whether the work product privilege protects an attorney's records from grand jury scrutiny where the attorney himself is the target of an investigation into possible obstruction of justice and suborning of perjury. Because this issue concerns an ongoing grand jury investigation, the Court will not use the names of any of the parties involved, and will only set forth the essential facts.

The subject of the instant subpoena is the records of the law firm of the target of the investigation. The records which are under subpoena relate to the target's representation of a former client in a federal criminal trial. The government has represented that the former client alleges that the target told him to give false testimony in the

course of the target's representation of him. After the subpoena was issued, the law firm produced a number of records and retained some, asserting a claim of privilege. Some of the law firm's internal documents were acquired by the grand jury from the former client who received his file upon termination of his relationship with the target.

The government has moved to compel production of these documents. The law firm opposes the motion to compel and moves to dismiss the grand jury on the ground that it has been exposed to documents which are absolutely privileged. The documents to which the law firm refers are those received from the former client, as well as some documents which were turned over to the grand jury by the law firm which are now claimed to be privileged.

Although the above facts raise an issue of waiver as well as the applicability of the work-product privilege, the Court has agreed to address initially the applicability of the privilege to the instant facts and to address the issue of waiver at a later time should it become necessary.

■ At the outset, it is important to note that the sole privilege which is being asserted is that of work product. The attorney-client privilege clearly has no application as the former client has executed a waiver of that privilege. There is no question that the attorney-client privilege belongs solely to the client and can be waived by him. *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977).

It should also be noted that there are certain factual assumptions which the Court is making for purposes of this opinion by agreement of the parties. The Court assumes that the documents in question were created in the course of the target's criminal representation of the former client. It is also assumed that these documents would enjoy, in the abstract, the description of work-product as to the target. Finally, it is assumed that the relationship between the target and the former client has been terminated and that there exists no ongoing litigation to which the instant documents have any relevance.

The work-product privilege had its origin in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). In that case, the Supreme Court held that statements of witnesses taken by an attorney during the course of preparation for trial were not discoverable in a civil context without a showing of necessity. The work-product privilege of *Hickman* was incorporated in Rule 26(b)(3) of the Federal Rules of Civil Procedure which provides in pertinent part:

(3) *Trial Preparation: Materials.* Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the Court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Although created in a civil context, the work-product privilege has been made applicable to criminal litigation. *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). In that case, the Court emphasized the importance of the work-product privilege to criminal justice:

Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital. The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure

the thorough preparation and presentation of each side of the case.

*Id.* at 238, 95 S.Ct. at 2170.

The work-product privilege embodies an important policy judgment that the system of justice requires that a "lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947). The Court in *Hickman* was obviously concerned that discovery of the processes of preparation would serve as a deterrent to the free and unfettered development of a case by an attorney.

> Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Id.* at 511, 67 S.Ct. at 393–394.

Juxtaposed against the "rock" of the work-product privilege is the "hard place" of the traditional broad discretion that the grand jury exercises in pursuing its investigative functions. "The investigative power of the grand jury is necessarily broad if its public responsibility is to be adequately discharged." *Branzburg v. Hayes*, 408 U.S. 665, 700, 92 S.Ct. 2646, 2666, 33 L.Ed.2d 626 (1972). The Supreme Court emphasized the special status of the grand jury in *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

> Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry. The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural

and evidentiary rules governing the conduct of criminal trials. "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime." *Blair v. United States*, 250 U.S. 273, 282 [39 S.Ct. 468, 471, 63 L.Ed. 979] (1919).

*Id.* at 343, 94 S.Ct. at 617. The Court must attempt to reconcile these two competing interests.

■ It is not disputed and, indeed, it is readily apparent, that the work-product privilege is applicable to grand jury proceedings. *In re Special September 1978 Grand Jury*, 640 F.2d 49 (7th Cir. 1980); *In re Grand Jury Investigation*, 599 F.2d 1224 (3d Cir. 1979); *In re Grand Jury Proceedings*, 473 F.2d 840 (8th Cir. 1973).

■ The government does contend, however, that the privilege has no applicability to a situation where the prior criminal litigation has been terminated and there is no ongoing litigation to which the subpoenaed documents relate. The Court finds that the case of *DuPlan Corporation v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480 (4th Cir. 1973), disposes of this argument. In that case, the United States Court of Appeals for the Fourth Circuit held that work-product material did not lose its privileged status upon termination of the litigation for which it was prepared. The Court held that reasons underlying the work-product privilege compelled the conclusion that it was not restricted by whether or not the litigation for which the materials were prepared had terminated. "Rather, the thrust of the [*Hickman*] decision was the qualified protection of the professional effort, confidentiality and activity of an attorney which transcends the rights of the litigants." *Id.* at 483. The Court finds that the reasoning applied in *DuPlan*(I) is as compelling, if not more so, in a criminal context. The Court has no trouble concluding that the work-product privilege is generally applicable to the documents in question.

The Court must next examine whether or not the privilege can be overcome. The Court must bifurcate its discussion to comport with the two categories of material covered by F.R.Civ.P. 26(b)(3). The rule provides that factual work-product is discoverable "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." The rule further provides that "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Thus, the Court must deal separately with factual work-product and opinion work-product.

■ The Court has little trouble concluding that factual work-product can be subpoenaed by the grand jury if the government can make the requisite showing under F.R.Civ.P. 26(b)(3) of necessity and undue hardship. The case law on this issue generally applies the distinction as between factual and opinion work-product and requires that the requisite showing under F.R.Civ.P. 26(b)(3) be made in order to obtain factual work-product through a grand jury subpoena. *In re Special September 1978 Grand Jury*, 640 F.2d 49 (7th Cir. 1980); *In re Grand Jury Investigation*, 599 F.2d 1224 (3d Cir. 1979); *In re Murphy*, 560 F.2d 326 (8th Cir. 1977); *In re Grand Jury Proceedings*, 73 F.R.D. 647 (M.D.Fla.1977). Therefore, if the government can make the requisite showing of necessity and undue hardship, these materials may be subpoenaed.

The final issue is the point at which the competing interests between the functioning of the grand jury and the work-product privilege come to the point of strongest conflict. The question of whether opinion work-product may be subject to disclosure under any circumstances is one which must be approached with great caution. Rule 26(b)(3) provides that "the court shall protect against" such disclosures. The United States Court of Appeals for the Fourth

Circuit has indicated that this language precludes the discovery of opinion work-product. "In our view, no showing of relevance, substantial need or undue hardship should justify compelled disclosure of an attorney's mental impressions, conclusions, opinions or legal theories. This is made clear by the Rule's use of the term "shall" as opposed to 'may'." *DuPlan Corporation v. Moulinage et Retorderie de Chavanoz, DuPlan* (II), 509 F.2d 730 (4th Cir. 1974).

The Court does not view this language in *DuPlan* (II) as dispositive. *DuPlan* (II) only addressed this issue in a civil context and does not really address the issue which the government raises in this case. Where the individual claiming the privilege in regard to opinion work-product is the subject of a grand jury investigation as to possible criminal conduct arising out of his representation during the course of which the subpoenaed materials were created, is there an exception to the inviolableness of opinion work-product? The Court believes that more than questions of need and undue hardship are implicated by this question.

There is very little precedent on this issue. The government relies heavily on *In re Grand Jury Proceedings*, 73 F.R.D. 647 (M.D.Fla.1977). In that case, an attorney moved to quash a grand jury subpoena which required production of material created during the course of representing a former client, on the ground of the work-product privilege. The Court, without drawing a distinction between opinion work-product and factual work-product, held that "where the work-product materials in question were prepared for a distinct and prior criminal litigation, long completed, the policies underlying the work-product privilege have already been achieved. The only effect of sustaining that conditional privilege now would be to thwart and frustrate the grand jury's investigative task." *Id.* at 653.

In juxtaposition with the foregoing approach is the reasoning of *In re Terkeltoub*, 256 F.Supp. 683 (S.D.N.Y.1966). In that case, the government moved to compel the testimony of an attorney as to his presence

at a meeting with his client for the purpose of persuading a witness to commit perjury. The Court clearly recognized the difficulty in balancing the competing interests at stake:

> On the one hand, there is the heavy weight of history and public need commanding that the grand jury's investigations be as unfettered as possible. And the Government comes here with the laudable purpose of guarding against suspected attacks on the integrity of the judicial process itself. On the other hand, the disclosures now demanded touch a vital center in the administration of criminal justice, the lawyer's work in investigating and preparing the defense of a criminal charge.

*Id.* at 684 (citations omitted). The Court ultimately held that the attorney should not be compelled to testify. The Court's conclusion seemed to be premised on the government's failure to make a "showing of the kind of vital, urgent, and immediate need for the unique knowledge that might warrant the extraordinary compulsion the government seeks." *Id.* at 686. The Court did not foreclose, however, the possibility that such testimony could be compelled under different circumstances. "Out of abundant caution, we leave open the possibility that still more rare circumstances could justify a demand of the kind here in question." *Id.*

The United States Court of Appeals for the Eighth Circuit held that an attorney could not be compelled to produce or testify with respect to summaries he made and conclusions he drew from witness interviews before a grand jury. *In re Grand Jury Proceedings*, 473 F.2d 840 (8th Cir. 1973). The Court contrasted the facts in the case before it with those in *Terkeltoub*. "In *Terkeltoub* '[t]he testimony sought [dealt] allegedly with a conversation amounting to, or looking toward, the commission of a crime.' In contrast, there is no credible showing in this case that Duffy in his interviews with nonemployees was engaged in the commission of any crime." *Id.* at 843 (citations omitted). The Court held that under the holding of *Hickman*, an at-

torney's memoranda in regard to interviews of witnesses were absolutely privileged. The Court also noted that it was not willing to rule beyond the scope of the case before it. "We limit our holding to the facts disclosed by the record in our present case. We do not suggest that the policies supporting the work-product doctrine, and therefore its scope, may not vary somewhat depending upon the nature of the proceeding in question." *Id.* at 849.

In contrast, the United States Court of Appeals for the Third Circuit has held opinion work-product was not absolutely privileged. *In re Grand Jury Investigation*, 599 F.2d 1224 (3d Cir. 1979). In that case, a grand jury had subpoenaed questionnaires and memoranda compiled by counsel during the course of an internal corporate investigation into foreign bribes. The Court classified the questionnaires as factual work-product and held that the government had shown sufficient need in order to obtain them. The memoranda written by counsel as to interviews were classified as opinion work-product and although held not absolutely privileged, were held to be "discoverable only in a 'rare situation.'" *Id.* at 1231. The Court required a showing of good cause to discover these materials and held that the government had failed to make such a showing.

The Court has found only two cases which discuss the existence of a fraud exception to the discovery of opinion work-product. The United States Court of Appeals for the Seventh Circuit applied such an exception in *In re Special September 1978 Grand Jury*, 640 F.2d 49 (7th Cir. 1980). The grand jury had subpoenaed documents from two law firms in regard to the filing of fraudulent reports by an association. The law firms asserted claims of attorney-client and work-product privilege. The Court held that the attorney-client privilege had been waived by the association by virtue of the government's *prima facie* showing that the association had used the law firms to perpetrate a fraud. As to work-product, the Court held that this showing of fraud by the client would over-

come the privilege as to factual work-product, but not as to opinion work-product.

> We reach this result because we are persuaded that the strong policy disfavoring client fraud requires that the client relinquish the benefit he would gain from the work product doctrine, which benefit is just as real although it is his attorney, rather than he, who asserts the doctrine. We are persuaded, however, that the attorney's mental impressions, conclusions, opinions and legal theories must still be protected in order to avoid an invasion of the attorney's necessary privacy in his work, an invasion not justified by the misfortune of representing a fraudulent client.

*Id.* at 63. Thus, the Court concluded that it was the lack of culpable conduct on the part of the attorneys themselves which protected their opinion work-product from disclosure.

The United States Court of Appeals for the Eighth Circuit addressed the issue of a fraud exception in the context of civil discovery. *In re Murphy*, 560 F.2d 326 (8th Cir. 1977). The government had brought a civil action against a number of pharmaceutical companies concerning an alleged fraudulently obtained patent. During discovery, the government sought to obtain opinion work-product from law firms which had represented the various defendants. The Court held that opinion work-product "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Id.* at 336. The Court noted that there may be a fraud exception to this immunity, but held that it would not apply in this case because the government had failed to make a *prima facie* showing that the companies were engaged in fraud when they sought the legal advice of the law firms. The Court, however, elaborated on their conclusion that work-product enjoyed "a *nearly* absolute immunity" as opposed to absolute immunity. "Our unwillingness to recognize an absolute immunity for opinion work-product stems from the concern that there may be rare situations, yet unencountered by this Court, where weighty considerations of public policy and a proper administration of

justice would militate against the non-discovery of an attorney's mental impressions." *Id.* at 336. More significantly, the Court noted that "a court may conclude that opinion work-product is not immune if it contains inculpatory evidence of the attorney's own illegal or fraudulent activity." *Id.* n.19. Thus, the Court anticipated the situation which has arisen in the instant case.

■ After examining the relevant precedent, the Court concludes that the competing interests which bear on this issue preclude any absolute conclusion as to whether the opinion work-product privilege or the grand jury's need to investigate is the stronger of the two. Rather, the Court believes that a balanced approach requires rejection of the proposition that opinion work-product is absolutely privileged, but agrees with the Court in *In re Murphy, supra,* that opinion work-product may be discovered only in "very rare and extraordinary circumstances." 560 F.2d at 336.

■ The Court finds that the approach taken by the Seventh Circuit in *In re Special September 1978 Grand Jury*, 640 F.2d 49 (7th Cir. 1980) is the most prudent way to protect the attorney's interest in keeping his thoughts inviolate without granting him a virtual shield from prosecution for acts committed in the course of representation of a client. The Court finds that the instant case may very well present the extraordinary situation in which opinion work-product may be subject to grand jury subpoena. Thus, the Court will require that in order to enforce the present grand jury subpoena, the government must, *in camera*, make a *prima facie* showing that the target of the investigation was engaging in illegal conduct in connection with his representation of his former client. Absent such a showing, the Court will not enforce the instant subpoena as to opinion work-product. At the same time, the government shall also make a showing of need and undue hardship as to factual work-product.