Tommy Jordan MARLOW, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14105.

Court of Criminal Appeals of Oklahoma.

Oct. 25, 1967

Jesse L. Leeds, Muskogee, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

## MEMORANDUM OPINION

BUSSEY, Judge.

Tommy Jordan Marlow, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Muskogee County for the crime of Burglary in the Second Degree After Former Conviction of a Felony. The punishment was left to the court who imposed the sentence of fifteen (15) years and a timely appeal has been perfected to this Court.

Defendant first contends that the trial court erred in refusing to remand this cause for a preliminary hearing. We are of the opinion that this assignment of error is without merit since the record reflects that the defendant appeared before the committing magistrate with counsel, waived preliminary hearing, was bound over to the District Court, and had entered a plea to the merits. While it is true that counsel who appeared with the defendant at his arraignment at which time the preliminary hearing was waived, later withdrew and the present counsel entered the case, this in no way affects the waiver of the preliminary.

The defendant's remaining assignments of error will be dealt with under the single proposition that the County Attorney committed reversible error by the asking of incompetent, irrelevant and prejudicial questions and compounded this error by introducing and attempting to introduce, evidence of other crimes for which the defendant had not been convicted. Since many of the questions asked by the County Attorney and evidence admitted on behalf of the State, were asked and admitted under the apparent assumption that the defendant had opened the door to these questions and evidence in support thereof, we deem it necessary to summarize that part of the defendant's testimony which may have "opened the door."

Briefly stated, the defendant testified that on or about the 26th day of June, 1965, he was at the scene where the burglary was committed when the window of the L & H Shoe Store was broken out by the fleeing burglars. He stated that he heard gun shots and having previously been convicted of a felony and arrested, jailed, and interrogated on numerous occasions by

the local authorities, he was fearful that if he remained at the scene he would be arrested and questioned concerning this burglary. He further testified that he attempted to flee from the scene, but was arrested by police officers of the City of Muskogee. He further testified that by reason of a gunshot wound previously inflicted, which had shattered the ball socket of his arm, he could not have used the burglary tools, which included a brace and bit found at the scene of the burglary which bore his fingerprints.

We here deem it necessary to summarize some of the testimony elicited from the defendant on cross-examination. Defendant, in response to questions propounded by the County Attorney admitted that the gunshot wound which shattered his ball socket was inflicted in a barroom in California and that he had been hospitalized in California and had escaped therefrom, returned to Oklahoma where he was arrested on a California warrant charging him with escape; that he had posted bond on that occasion at which time he was represented by Mr. Chester Norman. After his release on the bond, he was arrested in Pittsburg County and being unable to make bond, entered a plea of guilty and later fled the jail through an open door. The defendant was then asked where he was after that date, and the following questions and answers appear in the case-made at pages 84 and 85:

"Q. Where were you on September 15, 1965?

A. I don't remember. Do you know where I was?

Q. I can tell you where you weren't. Did you know that this case was set for trial on September 15, 1965?

A. It hadn't been set when I left the jail.

Q. Did you know that a bench warrant was issued for your arrest and that your bond was forfeited?

A. No, I wasn't here.

Q. Where were you, Mr. Marlow?

A. Where were you, Mr. Ferguson?

Q. I was sitting here waiting to try you.

A. I didn't know that.

MR. LEEDS: I move we have a five minute recess until he calms back down.

MR. FERGUSON: I would be most happy for a five minute recess.

MR. MARLOW: I could stand a drink of water."

During the recess the counsel for defendant asked for a mistrial and the same was overruled by the court, at which time the County Attorney announced that he intended to "continue along our same line" which he did, as can be illustrated by the testimony appearing at page 93 of the case-made:

"Q. Where are you living right now?

MR. LEEDS: Objection, same objection.

JUDGE GARRETT: Overruled.

MR. LEEDS: Exception.

A. I'm in jail under a Forty Thousand Dollar bond that—for second degree burglary that they normally set a $500 bond on.

Q. How long have you been down there?

A. Over two months.

Q. Did you come in voluntarily?

A. I tried to.

Q. Under what circumstances were you placed in the County jail?

MR. LEEDS: Objection, incompetent, irrelevant and immaterial.

A. I can prove that I tried to surrender.

Q. You tried to surrender?

A. Yes.

Q. What for?

A. Because you had a warrant for me.

Q. You know there is a warrant out for you?

A. It wasn't any secret, was it?

Q. How did you finally end up in the County jail?

A. I was stopped by a Highway Patrolman.

Q. On February 22, 1966?

A. Yes. He was a pretty nice guy, too.

Q. That's when you were placed in the County jail?

A. Yes.

Q. And you are under a $40,000.00 bond?

A. Yes.

Q. No further questions."

Not satisfied with eliciting the testimony from the defendant, as set forth above, on rebuttal the County Attorney called the Court Clerk who testified to the bond forfeiture in the instant case, entered on the 25th day of October, 1965 for his failure to appear; whereupon over the objection of the defendant, the certified order of the Court was admitted into evidence.

Thereafter the following occurred:

"MR. FERGUSON: I would like to call Jesse Leeds to testify. He has had the honor of being County Attorney of this County previously.

MR. LEEDS: I object to testifying in any case I'm trying. What is he going to question me about? I want to say this is highly irregular and I object to being called to testify about something I know nothing about.

JUDGE GARRETT: It would be no violation. It would be privileged communication.

### JESSE L. LEEDS

After first being sworn, testified as follows:

MR. FERGUSON: State your name, please.

A. Jesse Leeds.

Q. How are you employed?

A. I'm an attorney engaged in private practice, both civil and criminal.

Q. In the past, have you held any official position with Muskogee County?

A. Yes. I served six years as Assistant County Attorney and as County Attorney.

Q. When did you take office as County Attorney?

A. In January of 1963, I think.

Q. And you served how long?

A. Two years.

Q. Were you in office on May 9, 1963?

A. Yes.

Q. As County Attorney, did you have control and possession of all the records in that office?

A. They are not official records in the sense that Mr. Wright's are. They are personal records.

Q. When one County Attorney goes out of office those records are left there, is that correct?

A. Generally, yes.

Q. The cases that are filed, and the investigation that is conducted?

A. Generally they are. I took some records with me.

Q. But generally they are left in that office?

A. Yes.

Q. In your duties as County Attorney, you had control of that office and the employees working for you?

A. Yes. I had six employees.

Q. I hand you State's Exhibit #12. Will you look at that and examine it. Can you identify it?

A. I can tell you what it looks like to me.

Q. Would you do that, please?

A. It appears to be a letter head from the Sheriff's office in California, and it's

a letter addressed to the County Attorney's office here in Muskogee.

Q. Addressed to whom?

A. Well, it says James Leeds, County Attorney. I don't recall ever having seen this before. The date is May 9, 1963, at which time I was County Attorney. Though I see no envelope with it, I would assume that it was mailed. This is the first time I have seen it. I think I had three assistants and two secretaries and two investigators. They may have taken care of the matter.

Q. But it was addressed to your office as County Attorney when you were in office?

A. That's what it appears to be.

Q. And you have no personal knowledge of this, is that correct?

A. That's right.

Q. I have no further questions. The purpose of having this letter identified by Mr. Leeds is that he was serving in an official capacity for this county. I can take the stand and testify that those records were turned over to me and that it was in the file and it goes to the very crux of the defense in this case to the effect that the wound in his shoulder as to exactly how he received that wound. It's completely contrary to reports received by Mr. Leeds. He knows what the true facts are.

JUDGE GARRETT: It's not the best evidence. I'm not going to admit it."

The offered exhibit which was excluded by the trial judge, was a letter from the California authorities to the then County Attorney, Mr. Leeds, and contained the following statements:

"James Leeds
County Attorney
Muskogee, Oklahoma
        Re: Tommy Marlow
           File 54737 W–15833

Dear Sir:

The above captioned subject was arrested by Muskogee County Sheriff's Office on our warrant charging violation of section 4532 of the California Penal Code (escape from a county jail). They have advised us the extradition hearing has been set for June 18, 1963 and suggested further communication by us should be with your office.

In order to acquaint you with the background of the matter we thought you might like to know the following information. Tommy Marlow was involved in a barroom disturbance on January 29, 1963, during which he shot a 410 sawed-off shotgun in a room full of people, hitting a young woman by-stander in the face, blinding her. He was hit in the shoulder by a bullet from a weapon fired by his adversary. Marlow was subsequently arrested and confined in the Butte County Hospital from which he escaped on February 13, 1963. Subject has been charged, by this department, with assault with intent to commit murder (section 217 California Penal Code) and the escape now makes a second offense.

If Marlow does not wish to waive extradition, we intend to proceed with the necessary preparation to extradite.

Please keep us informed of the statuts of this case. Thank you in advance for your cooperation and if we can be of any assistance to you, do not hesitate to call on us."

It is the State's position that although the prosecutor's conduct in questioning the witnesses and attempting to introduce improper evidence, the proof of guilt is so overwhelming that the case should be affirmed. It is the State's further position that although the alleged prejudicial conduct of the County Attorney may have inflamed the jury, this Court should not modify the judgment and sentence from the term of 15 years for the reason that the Judge, and not the jury, imposed the sentence.

With the State's latter contention we are in perfect accord. We are of the opinion

that the Court should not modify the judgment and sentence imposed by the trial Judge, for the reason that the case should be reversed and remanded for a new trial.

While the competent evidence offered on behalf of the State is strong, nevertheless, the defendant controverted this evidence and explained his presence at the scene of the burglary thus creating a conflict in testimony. The repeated questioning of the defendant concerning details of criminal acts for which he had not been convicted and which were not connected to the charge on which he stood trial, could serve but one purpose and that was to prejudice the defendant. While we have held that:

"The prosecution in a criminal cause has a right to ask the defendant, when he takes the witness stand in his own behalf, whether or not he has been convicted of a particular crime, for the purpose of affecting his credibility. [Hyde v. Territory, 8 Okl. 69, 56 P. 851]";

we have likewise held that?

"The general rule is that when a defendant is put upon trial for one offense he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone and the admission of evidence of other crimes, either prior or subsequent to the offense for which he is on trial is inadmissible.

Evidence of other crimes in order to be admissible must come within one of the well-recognized exceptions to the rule. That it tends to establish (1) Motive, (2) Intent, (3) The absence of mistake or accident, (4) A common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other and (5) The identity of a person charged with the commission of the crime on trial. [Roulston v. State, Okl. Cr., 307 P.2d 861]."

We are likewise of the opinion it was incompetent to question the defendant relative to his failure to appear at the trial when it was originally set on this charge and are of the opinion that this error was further compounded when, over the objection of defense counsel, the Court Clerk was allowed to testify to the bond forfeiture and identify the certified copy of the court Order entered on the 25th day of October, 1965. This evidence did not tend to prove or disprove defendant's guilt on the charge of Burglary.

The errors above set forth, when considered together, would perhaps be sufficient to require a reversal.

The conduct of the County Attorney in calling the defense counsel to the stand and seeking to have him identify the document which was not only hearsay and highly prejudicial, but also related to the details of crimes other than the one for which the defendant was on trial, which the prosecutor knew, or should have known, was inadmissible, requires reversal of this case. When the prosecutor called counsel for the defendant to the stand, knowing that the testimony which he sought to elicit from the witness identifying an instrument which was inadmissible, he forced defense counsel either to object to the offer of such exhibit, thus creating the impression that counsel for defendant was concealing evidence of the defendant's guilt, or requiring the trial court to exclude the admission of such evidence without an objection being interposed thereto.

In all future cases when the State seeks to call counsel for defense to testify as a witness either on direct examination or in rebuttal, the prosecutor should so advise the Judge, who should conduct a hearing outside the presence of the jury to determine whether the evidence sought to be elicited from counsel for defense is competent and admissible. Then if the Court concludes that the testimony is inadmissible, he should deny the State's request to call

defense counsel as a witness; however, if the court determines that the exhibit sought to be adduced is competent, admissible, and not privileged, he should then permit the defendant to secure the services of an attorney to advise with him during the examination of his counsel, and if the defendant be indigent, and represented by court-appointed counsel, the court should appoint an attorney to represent him during the examination and permit the attorney so appointed to cross-examine the witness.

For all of the reasons above set forth, this case is reversed and remanded for a new trial.