**In re GRAND JURY SUBPOENA DUCES TECUM DATED JANUARY 2, 1985 (Robert M. Simels, Esq.).**

**Donald PAYDEN, Intervenor,**

v.

**UNITED STATES of America, Respondent.**

**No. M–11–188 (DNE).**

United States District Court, S.D. New York.

March 11, 1985.

Obermaier, Morvillo & Abramowitz, P.C., Elkan Abramowitz,* New York City, of counsel, and Robert M. Simels, P.C., Robert M. Simels, New York City, of counsel, for defendant-intervenor Donald Payden.

Committee on Criminal Advocacy of the Ass'n of the Bar of the City of N.Y., amicus curiae, Gerald B. Lefcourt, New York City, of counsel.

New York Civil Liberties Union, amicus curiae, Richard Emery, New York City, of counsel.

National Ass'n of Criminal Defense Lawyers, amicus curiae, Merrill N. Rubin and Alan Silber, New York City, of counsel.

N.Y. Criminal Bar Ass'n, amicus curiae, Herman Kaufman, New York City, of counsel.

EDELSTEIN, District Judge:

This motion involves a subpoena *duces tecum* issued by the Grand Jury on January 2, 1985 to Robert M. Simels, Esq. ("Simels"), counsel for defendant Donald Payden ("Payden"), to appear before the Grand Jury and disclose certain information regarding his fee arrangement with Payden. Payden has moved to quash the subpoena on the ground that it violates his sixth and fifth amendment rights. To resolve the issues presented by this motion the court has carefully balanced Payden's sixth and fifth amendment rights and the government's substantial interests in obtaining evidence of criminal conduct.[1] The intervenor's motion to quash the subpoena is hereby denied.

BACKGROUND

■ On August 2, 1984, Payden was arrested on charges of conspiring to sell her-

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., So. Dist. of N.Y., John K. Carroll, Stuart E. Abrams, Rhea Kemble Brecher, Asst. U.S. Attys., New York City, of counsel, for respondent.

* Mr. Abramowitz was granted leave to appear as co-counsel for defendant Donald Payden for this motion.

1. While it was not raised at oral argument, Payden contends that this motion should be heard by the judge presiding in Part I. In his memorandum, Payden refers to Rule 7(d) of the Rules of the Southern District of New York for the Division of Business Among District Judges which states that "all matters relating to pro-ceedings before the grand jury are to be heard by the judge presiding in Part I." The defendant concedes that the rule does not confer any right on the litigants. This motion, unlike most grand jury matters, involves a case that this court has been involved with for many months. It is not an unassigned or miscellaneous grand jury issue. In this instance, given this court's familiarity with the case, it is appropriate that this court rule on the present motion.

oin. Ten days later, Payden was named in a two count indictment, which charged Payden and another defendant with conspiracy to distribute heroin in violation of 21 U.S.C. § 846 and distribution and possession with intent to distribute heroin in violation of 21 U.S.C. § 841. Upon presentment before Magistrate Leonard Bernikow on August 3, 1984, an appearance was entered for Jay Goldberg, Esq. ("Goldberg") as Payden's counsel. Goldberg continued as Payden's counsel until early September, 1984.[2] Following a number of conferences and a hearing, Goldberg chose to withdraw because of an apparent conflict resulting from Goldberg's prior representation of one of Payden's alleged co-conspirators who was a participant in an intercepted telephone conversation that will be played at trial.[3] On September 19, 1984, Simels entered an appearance for Payden and has continued as Payden's counsel. On October 10, 1984, the Grand Jury returned a superseding indictment against Payden. In addition to the two counts contained in the initial indictment, the superseding indictment added a third defendant and a count under 21 U.S.C. § 848 which charges that Payden organized a continuing criminal narcotics enterprise ("848 count"). Under the 848 count, the government seeks forfeiture of all profits and proceeds of profits obtained by Payden from the operation of the narcotics enterprise and has particularized two items: cash seized from Payden's home and a 25% interest in a company as represented by shares of stock.[4]

On October 17, 1984, subsequent to the return of the first superseding indictment, the government served Simels with a trial subpoena, pursuant to Fed.R.Cr.P. 17(c).[5] In substance, the trial subpoena calls for production of documentary evidence relating to defendant's fee arrangement and payments to counsel. The government's stated purpose in seeking fee information pursuant to the trial subpoena "was to obtain evidence of the disposition by Payden in the post-August 2, 1984 period of a substantial sum of money because it would be probative evidence of his receipt of substantial profits from his narcotics trafficking." Government's Affidavit in Response to Motion to Quash at ¶ 31. Although the subpoena was made returnable October 27, 1984, Simels requested and was granted an extension by the government and permitted

2. The Assistant United States Attorney, at paragraph 24 of his affidavit in response to the motion to quash, asserts that in a conversation between Goldberg and the AUSA on or about the time of Goldberg's withdrawal, Goldberg stated that "his withdrawal would cost him $250,000.00—the sum he would receive for representing Payden." The AUSA then spoke with other prosecutors in his office who told him that in light of the complexity of this case, "such a substantial fee for experienced and highly regarded trial counsel is not unlikely."

By affidavit submitted on January 31, 1985, Goldberg states that the AUSA's assertion is "a blatant falsehood." He goes on to say: "I never volunteered such a remark to Mr. Carroll, and more to the point, would never have anticipated such a fee in this matter." Whether or not Goldberg actually made the statement the AUSA attributes to him is not critical. The court can take judicial notice of the high fees an attorney of Mr. Goldberg's caliber demands, especially in a complex narcotics case such as this.

3. After Goldberg brought the conflict to the court's attention, a hearing was conducted where Goldberg's prior client and alleged co-conspirator, Mr. McGee ("McGee"), was provided with court appointed counsel. The court questioned McGee regarding a waiver of any claim as a result of the conflict that would require Goldberg, in the course of defending Payden, to disclose matters protected by the attorney-client privilege. McGee declined to execute such a waiver. Goldberg, following discussions with Payden, decided that his withdrawal was in the best interests of Payden and the court agreed.

4. On February 25, 1985 a second superseding indictment was handed down which, in addition to the charges in the first superseding indictment, contained a detailed list of items sought pursuant to the forfeiture provision, including cash, a 25% interest in a company as represented by shares of stock, an automobile and jewelry. The indictment also contains a general forfeiture clause seeking "all profits and proceeds of profits obtained by [Payden] in such enterprise."

5. The court signed the subpoena during a pretrial conference that same day. No opposition to the subpoena was voiced at that time by Simels.

to withhold the information pending review by the United States Attorney of the decision to seek information regarding Simels' fee. On January 29, 1985, the government withdrew the trial subpoena, pending resolution of this motion.

On January 2, 1985, the Grand Jury issued a subpoena *duces tecum* to Simels. The Grand Jury subpoena commands testimony and the production of documents similar to those sought in the previously issued and subsequently withdrawn trial subpoena.[6] The Grand Jury subpoena was served on Simels in open court on January 3, 1985. On January 19, 1985, Payden moved to intervene and quash the Grand Jury subpoena and the court heard oral argument on February 5, 1985. The return date of the Grand Jury subpoena has been adjourned on several occasions pending a decision on the motion.

## DISCUSSION

### I. *Intervention of Donald Payden.*

■ Payden's motion to intervene is granted. Payden has presented substantial questions regarding his sixth amendment and fifth amendment rights. The threat to these rights presents a sufficient interest in the subject of the subpoena to entitle him to intervene as of right. *See In re Katz,* 623 F.2d 122, 125 (2d Cir.1980) (fifth amendment right of intervenor threatened when intervenor's attorney served with subpoena).

6. The subpoena commands:
 For the period January 1, 1984 to the present: any and all documents referring to, relating to, or reflecting any payment (or proposed payment) of fees (whether by cash, money order, real estate, or in any other way) by or on behalf of Donald Payden, with specific reference to (but not limited to) any retainer agreements, correspondence, bills, receipts, checks, photocopies of checks, or money orders, deposit tickets, ledger entries, as well as documents pertaining to the transfer of property for legal services *﹐ '
 * This item is not meant to apply to attorney-client privileged correspondence or other writings which may refer in passing, to the

### II. *The Motion to Quash the Grand Jury Subpoena.*

Payden seeks to quash the subpoena because it infringes on his right to the effective assistance of counsel provided by the sixth amendment and his fifth amendment right to be free from abuse of grand jury process.

### A. *Sixth Amendment Rights.*

The first step in analyzing this motion is to determine the nature of the alleged sixth amendment infringement. The sixth amendment[7] protects a number of aspects regarding the effective assistance of counsel, *see, e.g., Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (trial court's order preventing communication between counsel and defendant violated sixth amendment); *In re Grand Jury Matters,* 751 F.2d 13 (1st Cir.1984) (prosecutors' actions which prevented defense counsel from adequately preparing for impending trial violated sixth amendment); *United States v. Pineda,* 692 F.2d 284, 287 (2d Cir.1982) (ordinarily government's deliberate use of informer to elicit incriminatory statements from the defendant after the indictment violates the sixth amendment), and not all of them are implicated here. There are three possible areas of infringement in this case: the mere disclosure of the fee arrangement itself; the effect of responding to the subpoena on the ability of counsel to prepare for trial; and the effect of counsel testifying and the result of being forced to withdraw as trial counsel in this case.

fact of the payment of fees. No such documents need be provided in response to this item calling for non-privileged, fee-related documents. A listing of any items as to which a claim of privilege is is [sic] raised should be provided.

7. The sixth amendment provides in pertinent part:
 In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

### 1. *Disclosure of the information.*

■ The first area of possible infringement stems from the disclosure of the fee information. The fee information will supply the government with additional evidence of "substantial income," an element of the 848 count. Payden contends that the mere disclosure of the fee information, which may incriminate him, infringes his sixth amendment right. He contends that requiring Simels to disclose this information will chill Payden's relationship of trust and confidence with Simels. This argument is unpersuasive. The mere disclosure by defense counsel of information that is adverse to the defendant does not affect counsel's ability to represent the defendant effectively as required by the sixth amendment. *United States v. Wilson*, 571 F.Supp. 1417, 1422 (S.D.N.Y.1983) (not an infringement of sixth amendment unless legal strategy would be disclosed); *see In re Grand Jury Witness (Waxman)*, 695 F.2d 359, 363 (9th Cir.1982) (per curiam); *In re Grand Jury Proc., Des Moines, Iowa*, 568 F.2d 555, 558 (8th Cir.1977), *cert. denied*, 435 U.S. 999, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978); *United States v. Wolfson*, 558 F.2d 59, 65–66 (2d Cir.1977); *see also In re January 1976 Grand Jury (Gensen)*, 534 F.2d 719, 731 (7th Cir.1976) (where client makes his attorney a witness to the crime by giving him money, the client may not invoke the sixth amendment to bar the attorney's testimony at trial).

■ The sixth amendment protects two types of information from disclosure: privileged information and information that relates to the preparation of a defense. Thus, the sixth amendment provides broader protection than the attorney-client privilege. *See generally* Allis, *Limitations on Prosecutorial Discovery of the Defense Case in Federal Courts: The Shield of Confidentiality*, 50 S.Cal.L.Rev. 461, 507–10 (1977) (discussion of cases involving sixth amendment infringement based on "piercing of the shield of confidentiality which surrounds the preparations of the defense camp" which were not interferences with attorney-client privilege). The disclosure of fee information by an attorney is not protected by the attorney-client privilege in this circuit. *In re Shargel*, 742 F.2d 61, 62 (2d Cir.1984); *see also In re Witnesses Before Special March 1980 Grand Jury*, 729 F.2d 489, 492 (7th Cir. 1984) (government entitled to fee information from former attorneys pursuant to its investigation of continuing criminal enterprises); *United States v. Sherman*, 627 F.2d 189, 190–92 (9th Cir.1980) (privilege does not prevent disclosure of fees for use in "net worth" theory of computing tax liability).[8] Some courts apply a more expansive interpretation of the attorney-client privilege based on the " 'incrimination rationale,' which focuses upon whether the materials sought may be used as evidence against the client." *In re Shargel, supra*, 742 F.2d at 62 & n. 2. Thus, the first question is whether information which would be privileged under the "incrimination rationale" but not protected under this circuit's interpretation of attorney-client privilege is protected by the sixth amendment.

■ The answer must be that the scope of protection for "privileged" information under the sixth amendment is the same as that of the attorney-client privilege. *See United States v. Melvin*, 650 F.2d 641, 645 (5th Cir.1981) (sixth amendment violation only when there is an intrusion into a confidential attorney-client relationship); *United States v. Pappadio*, 346 F.2d 5, 9 (2d Cir.1965) (information not relating to subject matter of meetings not protected by attorney-client privilege and for the same reason did not interfere with right to effective representation of counsel), *vacated on other grounds sub nom. Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531,

---

8. Payden does not contend that the fee information is protected by the attorney-client privilege. In *United States v. Rogers*, 602 F.Supp. 1332 (D.Colo.1985), which intervenor's counsel, Mr. Abramowitz, submitted to the court on March 1, 1985, the Colorado District Court stated at page 24 that fee information "may be privileged if its disclosure would implicate the client in a crime." This is clearly not the law in this circuit. *In re Shargel, supra*, 742 F.2d at 63.

16 L.Ed.2d 622 (1966); *United States v. King,* 536 F.Supp. 253, 264–65 (C.D.Cal. 1982) ("Sixth Amendment right to effective counsel, like the attorney-client privilege, is based on the confidentiality of the communication"); *see also United States v. Valencia,* 541 F.2d 618, 621 (6th Cir.1976) (disclosure of privileged information by informer infringed sixth amendment right to effective assistance of counsel); *State v. Pratt,* 284 Md. 516, 398 A.2d 421, 433 (1979) ("the [attorney-client] privilege is ... closely tied to the federal ... constitutional guarantees of the effective assistance of counsel and could, if limited too severely, make these basic guarantees virtually meaningless"). This conclusion is based on the similarity of the rationales supporting the attorney-client privilege as defined in this circuit and this facet of sixth amendment protection. *See United States v. King, supra,* 536 F.Supp. at 265.[9] There is no such identity between the "incrimination rationale" and the underpinnings of the sixth amendment.

■ The sixth amendment guarantees defendant the right to an attorney who can effectively prepare a trial strategy, *Morris v. Slappy,* 461 U.S. 1, 21, 103 S.Ct. 1610, 1621, 75 L.Ed.2d 610 (1983) (Brennan, J., concurring), and effectively represent him at trial, *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). In order for this right to be realized, there must be full and frank discussion between defense counsel and defendant. The protection afforded by the attorney-client privilege is similar. As stated by the Second Circuit in *Shargel,* "[t]he underlying theory of the attorney-client privilege is 'that encouraging clients to make the fullest disclosure to their attorneys enables the latter to act more effectively, justly and expeditiously, and that these benefits outweigh the risks posed by barring full revelation in court.' " *Shargel, supra,* 742 F.2d at 62 (quoting J. Weinstein & M. Berger, Evidence ¶ 503(02) (1982)). Based on these rationales, Payden's sixth amendment right to the effective assistance of counsel is not infringed merely because his attorney is compelled to disclose incriminating information.

■ The second area of information protected by the sixth amendment relates to defense preparations. *See, e.g., United States v. King, supra,* 536 F.Supp. at 264–65; *In re Terkeltoub,* 256 F.Supp. 683, 684 (S.D.N.Y.1966).[10] When the information sought by the subpoena is examined in this light, no sixth amendment infringement is found. Defense counsel's ability to formulate defense strategy and prepare for trial are not impaired by the fact that he must divulge the fee arrangement. *United States v. Wilson,* 571 F.Supp. 1417, 1422 (S.D.N.Y.1983). *Compare In re Grand Jury Witness (Salas),* 695 F.2d 359, 362 (9th Cir.1982) (bills, ledgers and statements

9. It is possible that courts adhering to the "incrimination rationale" would find a sixth amendment infringement based on disclosure of privileged incriminating information and therefore litigants in those courts would be provided greater constitutional protection than that provided here. *See United States v. Rogers,* 602 F.Supp. 1332, 1349 (D.Colo.1985). This disparity is not based on differing views of the sixth amendment, but is based on differing interpretations of the scope of the attorney-client privilege.

10. Payden and the *amici* rely heavily on the case of *In re Terkeltoub,* 256 F.Supp. 683 (S.D.N.Y.1966), where the court quashed a grand jury subpoena issued to defense attorney on sixth amendment grounds. In *Terkeltoub,* the government sought to question defense counsel about a three hour post indictment meeting counsel had with his client and the government's chief witness. This conversation was not protected by the attorney-client privilege because of the presence of a third person. The court, however, quashed the subpoena because the scope of the government's subpoena went to "the heart of the job of 'thorough-going investigation and preparation.' " 256 F.Supp. at 685. The court stated that the "defendant has a right to prepare in secret, seeing and inviting those he deems loyal or those with whom he is willing to risk consultation." *Id.*

In contrast, the information the government seeks to obtain here does not intrude into the "privacy and confidentiality of [Simels'] work in preparing the case." *Id.* While the existence of the subpoena has distracted Simels in the preparation of his defense, the revelation of fee information will not impair Payden's ability to receive the effective assistance of counsel.

would reveal the nature of the services provided, such as researching particular areas of the law). Nothing the government seeks from Simels would in any way disclose Payden's legal strategy nor has Payden made such a contention. Payden's argument that disclosure of the information will destroy his relationship of trust and confidence with his attorney is makeweight. This contention is a retread of the attorney-client privilege argument the Second Circuit rejected in *Shargel*. Because the information sought by the subpoena is not protected by the attorney-client privilege and does not relate to defense strategy, the court finds that the disclosure of the information will not infringe Payden's sixth amendment rights.

### 2. *Time and effort required to respond to the subpoena and its effect on defense counsel's ability to prepare for trial.*

Payden contends that the subpoena will prevent Simels from adequately preparing for trial and thus infringe on his right to effective counsel. Payden as well as the *amici* refer the court to a recent decision by the First Circuit, *In re Grand Jury Matters*, 751 F.2d 13 (1st Cir.1984), which held that the issuance of a federal grand jury subpoena to counsel infringed the defendant's sixth amendment right to counsel where defendant was awaiting trial in state court on charges based on the same activities under investigation by the federal grand jury. The Court of Appeals for the First Circuit held that the district court did not "exceed [ ] its discretion in finding that the *timing* of the subpoenas to be inappropriate, given the pendency of the state criminal proceedings in which the subpoenaed attorneys were serving as defense

counsel." *Id.* at 17 (emphasis in original). In reaching its decision the court stated that "[e]ven when trials are pending, the grand jury's right to unprivileged evidence may outweigh the right of the defense bar and its clients not to be disturbed," and that "[t]he matter is one that turns on the particular facts as evaluated by the district judge." *Id.* at 19.

In a similar time bind and constraint the court would be concerned that Simels' effectiveness as counsel might be impaired. This is simply not the case here. While the court readily concedes that this is a rather complex case,[11] Simels has had ample time to prepare this case for trial. The court has not ordered Simels to proceed without adequate preparation.[12] Further, Simels has been on notice since October 17, 1984, just seven days after the filing of the first superseding indictment, that the government would be seeking information regarding his fee arrangement with Payden. As of the date of the filing of this Opinion, a trial date still has not been fixed. There can be no credible claim that the subpoena will prevent Payden's counsel from going to trial without adequate preparation.[13]

Payden further contends that even if Simels has enough time to prepare for trial, Simels is "discouraged" from taking the time and effort needed to prepare a proper defense, because of the ever-present threat that his attorneys' fees will eventually be forfeited. The canons of professional responsibility, however, require Simels to represent Payden zealously despite the risk that he will not receive compensation for his work. *See United States v. Ramey*, 559 F.Supp. 60, 62 (E.D.Tenn.1981)

---

**11.** This case involves approximately 3,000 recorded telephone intercepts and has raised a number of complex and novel legal issues, such as the issues presented by this motion and the imposition of pretrial detention, *see United States v. Payden*, 598 F.Supp. 1388 (S.D.N.Y. 1984).

**12.** The defendants have sought and the court has granted a waiver of the Speedy Trial Act. The court has been prepared to go to trial as soon as the defendants indicate they are ready.

*United States v. Payden*, 598 F.Supp. 1388, 1395 n. 8 (S.D.N.Y.1984).

**13.** On January 22, 1985, Simels filed, on behalf of Payden, an omnibus pretrial motion, which contains twenty-one separate requests for relief. The motion was supported by a ninety-one page memorandum of law. Obviously, the subpoena has not thus far materially hampered Simels in his preparation of Payden's defense.

(by accepting employment as counsel for defendant in a criminal case, the attorney impliedly stipulates that he will represent the client in the matter until its conclusion); *People v. Woods*, 117 Misc.2d 1, 2, 457 N.Y.S.2d 173, 175 (Dist.Ct.1982) ("attorney cannot leave his client in the middle of a matter, because he does not supply him with money, ... without running the risk of losing the benefit of that relation"); DR 7–101(A)(2); *see also* DR 2–110(C)(1).[14]

**14.** At oral argument, counsel for Mr. Payden argued that the sixth amendment forbids the government from obtaining forfeiture of attorneys' fees. In support of this argument, Abramowitz submitted on March 1, 1985, the Colorado district court's recent decision in *United States v. Rogers*, 602 F.Supp. 1332 (D.Colo.1985). In *Rogers*, the court held that the government is not entitled to a preliminary order restraining attorneys' fees under the forfeiture provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO). While this issue is not squarely before the court at this time, it warrants a response because forfeiture of attorneys' fees is one of the government's interests in obtaining the fee information.

In the context of addressing the scope of the attorney-client privilege, the Second Circuit voiced its concern over the possible use of attorneys to launder money. In *Shargel* the court stated:

It seems evident to us that a broad privilege against the disclosure of the identity of clients and of fee information might easily become an immunity for corrupt or criminal acts.... Such a shield would create unnecessary but considerable temptations to use lawyers as conduits of information or of commodities necessary to criminal schemes or as launderers of money. The bar and the system of justice will suffer little if all involved are aware that assured safety from disclosure does not exist.

742 F.2d at 64; *see also Lawyers Called Organized Crime 'Life Support'*, N.Y.L.J., March 11, 1985, at 1, col. 5 (staff of the President's Commission on Organized Crime debriefed attorney/informant who noted that "property is transferred to lawyers 'all the time' to pay the obligations of the family client. Because a lawyer's name was on the deposit or withdrawal form in the laundering transactions, ... the name of the Cosa Nostra member or associate would not appear on currency transaction reports."). The court cannot stand by and open the door to such abuse. In this light and after a review of the opinion, *Rogers* cannot be accepted as the law in this district. As noted *supra*, note 8, the court in *Rogers* relied in part on the incrimination rationale of the attorney-client privilege in refusing to hold a hearing for a preliminary restraining order on attorneys' fees. *Rogers, supra*, at 1349. That is clearly not the law in this circuit. Moreover, the court's ruling that forfeiture of attorneys' fees must be limited to sham or fraudulent transactions, *id.* at 1347, is contrary to the text of the legislative history. The Report of the Senate Judiciary Committee states that third party claims to property will prevail where the third party "acquired his legal interest after the acts giving rise to the forfeiture but did so in the context of a *bona fide* purchase for value and *had no reason to believe that the property was subject to forfeiture.*" S.Rep. No. 225, Comprehensive Crime Control Act of 1983, 98th Cong., 1st Sess. 209 (1983) (emphasis added) [hereinafter cited as Senate Report]. The indictment constitutes notice that the assets are subject to forfeiture, *United States v. Raimondo*, 721 F.2d 476, 477 (4th Cir.1983), *cert. denied*, — U.S. —, 105 S.Ct. 133, 83 L.Ed.2d 74 (1984); *United States v. Long*, 654 F.2d 911, 917 (3d Cir.1981), and a defendant's attorney certainly has actual notice of what is contained in the indictment. The court in *Rogers* would not limit this protection to attorneys and would not require forfeiture from one who receives funds in return for goods sold or services rendered at arm's length. *Rogers, supra*, at 1347–48. One who receives funds with the knowledge that the funds are subject to forfeiture cannot be said to have entered into an arms length transaction regardless of the price paid for the good or service. The court has little sympathy for transferees in this group even though the results of forfeiture may be harsh. *See* Note, *Criminal Forfeiture: Attacking the Economic Dimension of Organized Narcotics Trafficking*, 32 Am.U.L.Rev. 227, 243 (1982).

The defendants in *Rogers* argued that the "threat of forfeiture ... prevents them from using their assets to secure counsel of their choice. If counsel cannot be paid, they will not work and the clients suffer." *Rogers, supra*, at 1348. The major flaw in this argument is that it is not certain that the funds used to pay the attorney belonged to the defendant. As the court itself in *Rogers* noted, should the defendant be found guilty, title to the forfeited assets relates back to the time of the offense. *Id.* at 1341–42; *accord United States v. Raimondo, supra*, 721 F.2d at 478; *United States v. Long*, 654 F.2d 911, 916–17 (3d Cir.1981); *see* Senate Report, *supra*, at 200–01 (18 U.S.C. § 1963(c) codifies "taint theory" which states that forfeiture relates back to time of acts which give rise to the forfeiture). Thus, title to the assets is not resolved until the conclusion of the forfeiture proceeding. Third parties who obtain tainted assets with knowledge of the forfeiture proceedings assume the risk that the government may obtain superior title and reclaim those assets.

The court in *Rogers* also relies on a statement in the House Report, that "[n]othing in this section is intended to interfere with a person's Sixth Amendment rights to counsel." H.R.Rep.

Should Simels or Payden feel that Simels can no longer provide effective representation in this case, the court will ensure that Payden is represented by counsel who will provide effective representation of Payden's interests.

### 3. The attorney as witness and disqualification.

The determination that the information shall be disclosed raises the question of how disclosure is to be made. There are three possible ways the information may be disclosed:

(1) by stipulation or testimony of a non-conspirator;

(2) by Simels testifying before the Grand Jury; or

No. 845, pt. 1, 98th Cong., 2d Sess. 19 n. 1 (1984). *See Rogers, supra*, at 1347–48. This reliance, however, is misplaced. In the next sentence, the report states that "[t]he Committee, therefore does not resolve the conflict in District Court opinions on the use of restraining orders that impinge on a person's right to retain counsel in a criminal case." Clearly, Congress intended, not to resolve the sixth amendment conflict through this legislation, but to leave the resolution of these issues to the courts.

The court notes that there is a potential conflict between the interests of counsel and his client regarding the specific assets that would be subject to forfeiture. The attorney's interest would be for the preservation of his fees while the client would seek to preserve his own assets. *See People v. Csabon*, 103 Misc.2d 1109, 1110, 427 N.Y.S.2d 571, 572 (Sup.Ct.1980) (attorney who had agreed to pay fine for convicted client was disqualified from arguing motion to reduce or vacate the fine); DR 5–101 (lawyer should refuse employment when his own interests may impair his independent professional judgment); DR 5–103 (lawyer should avoid the acquisition of an interest in the cause of action or subject matter of litigation he is conducting for his client). This conflict may be avoided either by bifurcating the trial or through the use of the civil forfeiture provisions, 21 U.S.C. § 881. Defendant could retain or be appointed independent counsel to represent his interests at the forfeiture proceeding. This procedure would protect the defendant's right to conflict free counsel, while enabling the government to obtain the fruits of the alleged narcotics enterprise.

Fees paid to attorneys cannot become a safe harbor from forfeiture of the profits of illegal enterprises. In the same manner that a defendant cannot obtain a Rolls-Royce with the fruits

(3) by Simels testifying at trial.

a. Stipulation or testimony of non-conspirator.

▮ By letter dated February 7, 1985, the government stated that "the legitimate interests of both the Government and Payden can be accommodated without the appearance of Mr. Simels as a grand jury or a trial witness and therefore, without his consequent withdrawal as trial counsel." The government proposes that Simels supply the fee information in a sworn statement and that such information could be admitted at trial, either through a stipulation or, if the information leads to a non-conspirator witness who has knowledge of the transfer of attorneys' fees, by that witness's testimony.[15] In light of the court's

of a crime, he cannot be permitted to obtain the services of the Rolls-Royce of attorneys from these same tainted funds. *See Lawyers Called Organized Crime 'Life Support'*, N.Y.L.J., March 11, 1985, at 1, col. 5 (President's Commission on Organized Crime reports that " 'a small group of lawyers' have become a "critical element in the life support system of organized crime.' "). To permit this would undermine the purpose of forfeiture statutes, which is to strip offenders and organizations of their economic power. Senate Report, *supra*, at 191.

**15.** In its letter of February 7, 1985 the government stated, in pertinent part:

"[W]e would propose that Mr. Simels provide to the Government in a signed sworn statement, with the court's supervision, the following information:

(1) The amount of any fee paid by Payden;
(2) The amount of any fee promised by Payden;
(3) The form of payment including the source of such payment and whether it was in cash or in the form of some other type of asset;
(4) The manner, place, and time of payment;
(5) The identity of the individual or individual[s] who delivered the fee; and
(6) Any documents reflecting payment, receipt, deposit, transfer, or investment of said fees.

"Moreover, if the production of such information identifies a non-conspirator witness who can testify to said transfer, the Government will not request of Payden a stipulation setting forth the details of the fee transaction. If such a witness is not available to testify, the Government would require a stipulation to that effect. If the disclosure of such information leads to the identification of a non-conspirator witness

determination that the information shall be disclosed, Payden's rights will not be infringed by the admission of the information by a stipulation or through the testimony of a non-conspirator witness. Thus, this approach would be the least intrusive on Payden's rights.

b. Testifying before the Grand Jury.

Should Simels reject the government's proposal, one alternative is that he be required to testify before the Grand Jury. Payden contends that this eventuality will "chill" the attorney-client relationship so as to erode his right to effective assistance of counsel.

 "[M]erely requiring a defendant's lawyer to testify does not alone constitute a material interference with his

or to agreement on a stipulation, it will not be necessary to call Mr. Simels as a witness in either the grand jury or at trial.

"Further, the Government would then agree to pursue forfeiture of such assets, if at all, preferably by a bifurcated trial but by civil forfeiture proceedings, if the Court directed, so long as Mr. Simels placed any and all fee payments in escrow pending completion of such proceedings. At a bifurcated trial, the Government would anticipate offering evidence of Payden's otherwise unexplained wealth, including any fee payments during the initial proceeding; during the forfeiture proceedings, should Payden be convicted, Mr. Simels could raise any affirmative defense available to him. Should the court direct that the Government pursue these assets by civil forfeiture, the Government's interests could be preserved by defendant's waiving of any rights pursuant to Fed.R.Cr.P. 6(e)."

16. Calling a lawyer before a grand jury where his client/defendant is the subject of a grand jury investigation is a serious matter. The very presence of the attorney in the grand jury room, even if only to assert valid privileges, can raise doubts in the client's mind as to the lawyer's unfettered devotion to the client's interests and thus impinge upon the attorney-client relationship. *In re Grand Jury Investigation (Sturgis)*, 412 F.Supp. 943, 945–46 (E.D.Pa.1976).

One court has stated that requiring an attorney to testify will result in a substantial "chill" on truthful communications from client to attorney and that holding the attorney in contempt "may totally destroy the attorney-client relationship." *In re Special Grand Jury No. 81–1 (Harvey)*, 676 F.2d 1005, 1009 n. 4 (4th Cir.), *vacated and withdrawn when grand jury target indicted and became fugitive*, 697 F.2d 112 (4th

function as an advocate or operate to deprive the accused of a fair trial." *United States v. Freeman*, 519 F.2d 67, 68 (9th Cir.1975); *accord United States v. Hall*, 346 F.2d 875, 882 (2d Cir.), *cert. denied*, 382 U.S. 910 & 947, 86 S.Ct. 250 & 408, 15 L.Ed.2d 161, 355 (1965). In *in re Grand Jury Subpoena Served Upon Arthur Kinoy*, 326 F.Supp. 400, 402 (S.D.N.Y.1970), the court stated that "[l]awyers, of all people, should be supposed competent to enforce in the grand jury room their legitimate duties of confidentiality. They are obliged at the same time, not less than others, to give their non-privileged knowledge to the grand jury." *Accord United States v. Wolfson*, 558 F.2d 59, 65–66 (2d Cir.1977); *see In re Grand Jury Proc., Des Moines, Iowa*, 568 F.2d 555, 558 (8th Cir.1977).[16]

Cir.1982) (en banc). The court in *Harvey* held that before a subpoena will issue to the attorney of the target of a grand jury investigation, the government must make a preliminary showing of the relevance and its need for the evidence and that the information is not sought for another purpose. *Id.* at 1010–11. The court, however, stated that "[w]e do not hold that the sixth amendment requires a preliminary showing in this case." *Id.* at 1012. The case thus rests on the attorney-client privilege and not the sixth amendment. The subpoena in this case seeks only non-privileged information from Simels. *In re Shargel, supra*, 742 F.2d at 62, therefore no preliminary showing would be required under *Harvey*.

The present rule in this circuit is that no preliminary showing need be made before a person may be subpoenaed to appear before the grand jury. *In re Liberatore*, 574 F.2d 78, 83–84 (2d Cir.1978). This court will not create an exception to this general rule when the defendant's attorney is subpoenaed. The Court of Appeals for the Second Circuit is presently considering whether the *Harvey* preliminary showing need be made before a grand jury subpoena may issue to the attorney of a target of an investigation. *In re Grand Jury Subpoena Served upon John Doe*, No. 84–6319 (2d Cir. appeal filed Oct. 25, 1984). Should the court of appeals find that a preliminary showing is required, this will affect the procedure to be followed prior to the issuance of a subpoena in the situation before this court. The court's conclusion, however, would not be altered.

The government has made a preliminary showing sufficient to meet the *Harvey* standard. The information is unquestionably relevant to the "substantial income" element of the 848 count as well as to the forfeiture issue. Further,

Simels' appearance before the Grand Jury will not deprive Payden of the effective assistance of counsel.

Defense counsel has conceded that the government has not acted in bad faith in this case and that the government is not seeking this information in order to harass defense counsel. *Cf. In re Grand Jury Matters,* 751 F.2d 13, 19 (1st Cir.1984) (district court found United States Attorney's actions constituted "harassment"). Under the circumstances of this case, the court does not find that requiring Simels to comply with the subpoena is "oppressive or unreasonable." Fed.R.Crim.P. 17(c).

c. Requiring Simels to testify at trial.

■■■■ Should Simels testify regarding the fee arrangement at trial,[17] this would result in his disqualification as trial counsel based on Disciplinary Rule 5–102. The disqualification of counsel undoubtedly "pos[es] a confrontation between the public's right to every man's evidence and the client's right to employ counsel of his own choosing," *In re Grand Jury Proceedings (Jones),* 517 F.2d 666, 674 n. 4 (5th Cir.

1975), however, the disqualification of counsel when he becomes a witness is not a *per se* infringment of the defendant's sixth amendment right to effective assistance of counsel. Rather, the sixth amendment interest is balanced against the ethical and other considerations when making the decision to disqualify counsel. *United States v. McKeon,* 738 F.2d 26, 34–35 (2d Cir. 1984); *United States v. Cunningham,* 672 F.2d 1064, 1070 (2d Cir.), *cert. denied,* —— U.S. —— 104 S.Ct. 2154, 80 L.Ed.2d 540 (1982); *United States v. Peng,* 602 F.Supp. 298, 300–01 (S.D.N.Y.1985). " 'The right to assistance of counsel does not imply the absolute right to counsel of one's choice. A defendant's right to obtain counsel of his choice must be balanced against the need for efficient and effective administration of criminal justice.' ... Where defense counsel's testimony is important to the government's case, the best alternative is for counsel to withdraw." *Grady v. United States,* 715 F.2d 402, 404 (8th Cir.1983) (quoting *United States v. Weninger,* 624 F.2d 163, 166 (10th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980)).[18] While sixth amendment interests

the government needs the information, not only for use during this trial, but also because the information may further the Grand Jury's investigation into the existence of possible co-conspirators. Payden contends that the government has not established sufficient "need" for Simel's testimony because the information sought could be obtained from another source. Specifically, Payden contends that the government may subpoena Jay Goldberg, Payden's previous attorney, and obtain similar information regarding attorneys' fees. The government, however, is entitled to the best evidence of criminal conduct, even if their investigation hampers defense counsel. *United States v. Cortellesso,* 663 F.2d 361, 363 (1st Cir.1981); *United States v. Gomez,* 584 F.Supp. 1185, 1188–89 (D.R.I.1984). Payden's fee arrangement with Goldberg, while probative of Payden's income, is not the same evidence as Payden's fee arrangement with Simels. Both fee arrangements constitute evidence of Payden's alleged unexplained wealth. Simels has not demonstrated that information regarding his fee arrangement with Payden could be obtained from another source, and thus he is the best source for the information. *See Harvey, supra,* 676 F.2d at 1011, n. 6.

**17.** To obtain pretrial disclosure of the documents and other tangible evidence pursuant to a trial subpoena, the government would be re-

quired to satisfy the standards set forth by Judge Weinfeld in *United States v. Iozia,* 13 F.R.D. 335, 338 (S.D.N.Y.1952): (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that failure to obtain inspection may tend unreasonably to delay trial; and (4) that the application is made in good faith and is not intended as a fishing expedition.

**18.** Numerous problems are posed when the defense attorney continues his representation when he is required to testify against his client. While disqualification of counsel may present sixth amendment issues, permitting an attorney to perform this dual role may also result in an infringement on the client's right to effective assistance of counsel. *People v. Lathrom,* 192 Cal.App.2d 216, 13 Cal.Rptr. 325, 329–35 (1961) (defendant denied effective assistance of counsel when attorney/witness was unable to consult with client, effectively cross-examine himself and "protect the record" by making appropriate objections and maintaining a favorable impression for the client); *State v. Livingston,* 30 Ohio App.2d 232, 285 N.E.2d 75, 77–78 (1972) (same); *Marlow v. State,* 432 P.2d 999, 1004–05

are implicated, they are not absolute and do not require the court to quash the subpoena. Moreover, to accommodate Payden's sixth amendment interests related to his choice of counsel, the court could order a limited disqualification and allow Simels to continue to assist with Payden's defense, but not appear at counsel table in front of the jury. *See United States v. Cunningham, supra,* 672 F.2d at 1074 (disadvantage to defendant as a result of the disqualification is "reduced considerably by the limited nature of the disqualification").

### 4. *Future subpoenas.*

 The court holds that the government may subpoena Simels without making any preliminary showing. The court cautions the government in the strongest terms not to construe this as an open door to attorney shopping until the government decides that it has enough information regarding Payden's assets or until Payden seeks court appointed counsel.[19] This court does not share the fears of the *amici* or the court in *United States v. Rogers,* 602 F.Supp. 1332, 1350 (D.Colo. 1985) (allowing forfeiture of attorneys' fees would arm the government with "the ultimate tactical advantage of being able to exclude competent defense counsel as it chooses"), in light of this caution and the court's interest in the efficient administration of justice, which includes the expeditious handling of criminal cases, *see Walters v. United States,* 404 F.Supp. 996, 998 (S.D.N.Y.1975), *aff'd mem.,* 542 F.2d 1166 (2d Cir.1976).

### 5. *Summary.*

The court finds that based on the contentions raised by this motion and the framework established in this opinion, the defendant has and will continue to receive the effective assistance of counsel whether represented by Simels or another attorney.

### B. Fifth Amendment Rights

Payden claims that the issuance of the subpoena constitutes an abuse of grand jury process and thus violates his fifth amendment rights. It is asserted that the government is using the Grand Jury as a discovery tool which is clearly not permitted. *United States v. Doss,* 563 F.2d 265, 276 (6th Cir.1977) (en banc); *United States v. Fisher,* 455 F.2d 1101, 1104–05 (2d Cir. 1972). The basis for the defendant's contention is a statement by the Assistant United States Attorney for this case at a pre-trial conference. The AUSA stated that the subpoena relates to the 848 count of the first superseding indictment. The government contends that the information is required for the forfeiture portion of the 848 count. The defendant argues that because the government need not include the details of the items sought by forfeiture in the indictment, *United States v. Grammatikos,* 633 F.2d 1013, 1024 (2d Cir.1980); *United States v. Thevis,* 474 F.Supp. 134, 145 (N.D.Ga.1979); *United States v. Bergdoll,* 412 F.Supp. 1308, 1318–19 n. 17 (D.Del.1976), it is an abuse of grand jury process to obtain information regarding potentially forfeitable assets through the Grand Jury. Clearly this information may be used against the defendant at trial to establish the "substantial income" element of the 848 count and the items subject to forfeiture.

 The court finds that the Grand Jury investigation was still in progress at

---

(Okla.Crim.App.1967) (if defense attorney called as witness, defendant should be permitted to secure another attorney to advise him during examination of counsel to protect right to effective assistance of counsel); *State v. Sullivan,* 60 Wash.2d 214, 373 P.2d 474, 476–78 (1962) (attorney/witness conducted "ineffectual" cross-examination of himself); *see Hanks v. United States,* 420 F.2d 412, 413–14 (10th Cir.) (defendant not deprived of counsel when co-counsel was with defendant when other defense attorney testified), *cert. denied,* 398 U.S. 913, 90 S.Ct. 1712, 26 L.Ed.2d 75 (1970).

**19.** This court does not concur in the court's statement in *Rogers, supra,* at 1350, that appointed counsel is inherently inadequate to represent a defendant on a RICO or 848 count. *See United States v. Bello,* 470 F.Supp. 723, 725 (S.D.Cal. 1979) (defendant not denied sixth amendment right to counsel by imposition of restraining order where court would allow court appointed counsel if defendant lacked the means to hire counsel other than through the use of tainted funds).

the time the subpoena was issued. As the Supreme Court has noted, " '[a] grand jury's investigation is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed....' " *United States v. Dionisio*, 410 U.S. 1, 13, 93 S.Ct. 764, 771, 35 L.Ed.2d 67 (1973) (quoting *United States v. Stone*, 429 F.2d 138, 140 (2d Cir.1970)). While the information need not be included in the indictment, there is no reason to preclude the Grand Jury from obtaining information relevant to forfeiture and including it in the indictment. In order to quash the subpoena based on an abuse of grand jury process, the defendant must demonstrate that the sole or dominant purpose of the investigation is to discover information for use at trial. *In re Grand Jury Subpoena (Koecher)*, 755 F.2d 1022, 1024 n. 2 (2d Cir.1985); *In re Grand Jury Proceedings (Johanson)*, 632 F.2d 1033, 1041 (3d Cir.1980).

Courts have been reluctant to quash a subpoena based on this "sole or dominant purpose" rationale. 8 J. Moore, Moore's Federal Practice ¶ 6.04[5], at 6–87 n. 41 (1984) ("[I]t is not at all difficult for the prosecutor to establish that it was not his sole or dominant purpose to gather evidence for the existing case.").[20] For example, the filing of superseding indictments have supported the government's contention that an investigation is continuing. *United States v. Shakur*, 560 F.Supp. 313, 318 (S.D.N.Y.1983). Thus, this is not a situation in which the government is using grand jury process for the purpose of harassment, *In re Grand Jury Matters*, 751 F.2d 13, 19 (1st Cir.1984); nor is the government attempting to freeze Simels'

testimony for trial, *see, e.g., United States v. Gibbons*, 607 F.2d 1320, 1328 (10th Cir. 1979); *United States v. Fisher*, 455 F.2d 1101, 1104–05 (2d Cir.1972). "[W]here there is another legitimate purpose behind the grand jury investigation, the proceeding would not be improper merely because the Government may derive an incidental benefit." *United States v. Gibbons*, supra, 607 F.2d at 1328; *accord United States v. Zarattini*, 552 F.2d 753, 757 (7th Cir.), *cert. denied*, 431 U.S. 942, 97 S.Ct. 2661, 53 L.Ed.2d 262 (1977).

■ In addition to gathering information to include in the 848 count, the government asserts that the Grand Jury is also investigating other unindicted co-conspirators. The identity of the person delivering funds to Simels, it is argued, would lead to the identity of possible co-conspirators. This is certainly within the scope of the Grand Jury's investigatory power and does not constitute an abuse of grand jury process. *See, e.g., In re Grand Jury Proceedings (Johanson)*, 632 F.2d 1033, 1042 (3d Cir.1980); *United States v. Gibbons*, supra, 607 F.2d at 1328–29; *United States v. Woods*, 544 F.2d 242, 250 (6th Cir.1976), *cert. denied*, 429 U.S. 1062, 97 S.Ct. 787, 50 L.Ed.2d 778 & 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977). The intervenor has failed to satisfy his burden that the issuance of the subpoena is an abuse of grand jury process even though the information may be used at trial.

### CONCLUSION

Intervenor's motion to quash the Grand Jury subpoena is denied. In the event Mr. Simels and the government enter into a stipulation pursuant to the government's letter of February 7, 1985 the court will

---

**20.** While the "sole or dominant purpose" rule is often invoked, *see, e.g., United States v. Del Toro*, 513 F.2d 656, 664 (2d Cir.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975); *United States v. Fisher*, 455 F.2d 1101, 1104–05 (2d Cir.1972); *United States v. Dardi*, 330 F.2d 316, 336 (2d Cir.), *cert. denied*, 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50 & 379 U.S. 869, 85 S.Ct. 117, 13 L.Ed.2d 73 (1964), it is rarely applied as a basis for quashing a grand jury subpoena. Those cases in which the court has exercised its

discretion to quash the subpoena usually involve the post-indictment subpoena of the defendant. *United States v. Mandujano*, 425 U.S. 564, 594, 96 S.Ct. 1768, 1785, 48 L.Ed.2d 212 (1976) (Brennan, J., concurring); *see, e.g., United States v. Doss*, 563 F.2d 265 (6th Cir.1977) (en banc). Clearly, defendant is subject to far less prejudice when only his attorney is subpoenaed to give circumscribed, nonprivileged information.

quash the subpoena. On the other hand, if Mr. Simels fails to enter into the stipulation proposed by the government, Mr. Simels is ordered to appear before the Grand Jury as commanded in the subpoena and provide the Grand Jury with the documents requested therein one week from the filing of this Opinion or at a later date should the Grand Jury so direct.

SO ORDERED.